## Commonwealth *v.* Kevin, Appellant.

*Criminal law—Adulteration of food—Act of June 26, 1895, P. L.* 317.

The Act of June 26, 1895, P. L. 317, entitled " An act to provide against the adulteration of food and providing for the enforcement thereof," as properly construed, prohibits the addition to a food product of any foreign substance poisonous or injurious to health, regardless of the quantity used, or whether or not the quantity of the substance used was sufficient to make the adulterated article poisonous or injurious to health. It is not the quantity, but the nature of substance added which the act prohibits.

On the trial of an indictment for the sale of a pint of raspberry syrup alleged to contain salicylic acid which was charged and proven to be poisonous or injurious to health, the court excluded testimony offered by the de-

202        23
e 26 SC ¹588
26 SC ²590
202        23¹
212        292
28 SC    304
202        23
32 SC      2

202      23¹
e39SC⁴344

fendant to prove the quantity of acid present, and to prove that in fact the quantity used was entirely harmless and not poisonous or injurious to health, and charged that the jury might convict if they found salicylic acid present in any quantity. The jury returned a verdict of guilty. *Held,* that the conviction should be sustained.

*Constitutional law—Police power—Pure food law—Act of June 26, 1895, P. L. 317.*

Section 7 of the Act of June 26, 1895, P. L. 317, known as the pure food law does not offend against any provision of the constitution of Pennsylvania, and is a proper exercise of the police power of the state.

It is within the province of the general assembly to determine whether the addition of a poisonous or injurious substance to a food article endangers the health of the citizens of the state who use the compound, and if it does, then it is clearly within the police power of the state to prohibit the manufacture and sale of the adulterated article as well as to protect the public from imposition or fraud in the sale of it. The exercise of such authority by the legislative department of the government does not transcend the constitutional limit of its power.

Argued Jan. 21, 1902. Appeal, No. 355, Jan T., 1901, by defendant, from judgment of Superior Co., Oct. T., 1900, No. 137, affirming judgment of Q. S. Phila. Co., Aug. T., 1900, No. 391, on verdict of guilty in case of Commonwealth v. John W. Kevin. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Indictment under the pure food act of June 26, 1895.

Appeal from the Superior Court. See 18 Pa. Superior Ct. 414. The facts appear by the opinion of the Supreme Court.

*Error assigned* was in sustaining the judgment of the Superior Court.

*Theodore W. Reath,* with him *Edward F. Hoffman* and *Thomas Reath,* for appellant.—No offense is committed under the act of 1895, which provides that an article of food or drink shall be deemed adulterated "if it contains any added substance or ingredient which is poisonous or injurious to health," unless in the quantity present the added ingredient would render the article poisonous or injurious to the health of persons consuming the article : Rose v. State, 11 Ohio Circuit Ct. 87.

Wherever a statute is susceptible of two constructions, of which the one would make it unconstitutional, and the other

constitutional, the latter is to be adopted. A legislative act cannot make that a fact which is not a fact.

The 7th subdivision of section 3 of the act of June 26, 1895, would be unconstitutional if construed to forbid the addition of substances or ingredients not poisonous or injurious to the health of persons consuming the article of food : Edwards's App., 108 Pa. 283 ; Blakeslee Mfg. Co. v. Hilton, 5 Pa. Superior Ct. 184 ; Com. v. McCann, 14 Pa. Superior Ct. 221 ; In re Jacobs, 98 N. Y. 98 ; People v. Biesecker, 68 N. Y. Supp. 134; People v. Marx, 99 N. Y. 377 ; 2 N. E. Repr. 29.

*Charles E. Bartlett,* with him *Charles L. Brown* and *John Weaver,* district attorney, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, March 3, 1902 :

The defendant, who is engaged in the grocery business in the city of Philadelphia, was tried and convicted in the court of quarter sessions of Philadelphia county on an indictment charging him with having sold " one pint of raspberry syrup, the said raspberry syrup then and there containing an added substance and ingredient, to wit: salicylic acid, which is poisonous and injurious to health." The indictment was found under the Act of June 26, 1895, P. L. 317, entitled "An act to provide against the adulteration of food and providing for the enforcement thereof," and commonly known as the pure food law. The 1st section prohibits the manufacture or sale of adulterated food, the 2d section defines the term " food " as used in the act and the 3d section provides, inter alia, that " An article shall be deemed to be adulterated within the meaning of this act: (*a*) in case of food . . . . (7) If it contains any added substance or ingredient which is poisonous or injurious to the health." The defendant was indicted for a violation of the 7th clause of the 3d section of the act.

On the trial of the cause it was shown that the defendant had sold a bottle of raspberry syrup and it was admitted by him that it contained salicylic acid. It appeared from the evidence that the acid was a substance foreign to raspberry syrup. Expert testimony was introduced by the commonwealth and the defendant to prove what salicylic acid is, and whether it is poisonous and injurious to health. The commonwealth expert made an

analysis of the syrup and testified that the acid was injurious to health; that it was dangerous because it was apt to produce disease; that the words "poisonous" and "injurious to health" were almost synonymous in cases where the poison is not always fatal; that if continuously used, the acid is injurious to health in any quantity, but if not so used its injuriousness would depend upon the person taking it. The defendant's expert testified that salicylic acid would not be classed in the group of poisons; that whether or not it is poisonous or injurious depends upon the amount taken and how it is used, which applies to arsenic or any other posion; that if the acid was taken in a harmful amount it would affect injuriously the digestion, the kidneys and the heart; that all poisons must be administered medicinally and that witness had known of salicylic acid being administered beneficially in medicinal doses; that the acid is a substance foreign to raspberry syrup.

The trial court submitted the case to the jury and charged that the only question to be determined by them was whether or not salicylic acid was poisonous or injurious to health; that if it was, it was the duty of the jury to convict. A verdict of guilty was returned by the jury and the defendant, having been sentenced, appealed to the Superior Court, which, by a divided court, affirmed the judgment of the trial court. He thereupon appealed to this court.

The determination of the several assignments of error involves a consideration of clause 7 of section 3 of the act of June 26, 1895, under which the indictment was found. The learned trial judge held that the clause prohibited the addition to a food product of any foreign substance poisonous or injurious to health, regardless of the quantity used or whether or not the quantity of the substance used was sufficient to make the adulterated article poisonous or injurious to health. In other words, it is not the quantity but the nature of the substance added which the act prohibits. The court held that if the foreign substance added to an article of food is poisonous or injurious in any quantity, the statute declares it to be an adulteration. The case was tried upon this construction of the act, and the rulings of the trial court, assigned for error in the Superior Court and on this appeal, are based upon that interpretation of the statute.

The learned counsel for the defendant contend that the act is not violated unless the quantity of the foreign substance is sufficient to make the compound poisonous or injurious to health. They state their position in their fourth point for charge which is as follows : " The defendant in this case is indicted for selling one bottle of syrup, and if the jury should find from the evidence that the single bottle actually sold did not contain salicylic acid in sufficient quantities to be poisonous or injurious to health, then your verdict must be for the defendant."

We are not prepared to adopt this construction of the clause of the section under consideration. The purpose of the statute was to prevent the adulteration of food, the term " food " including all articles used for food or drink by man. The act clearly defines what shall be deemed an adulterated article within the meaning of its terms. The 3d section is subdivided into seven clauses, each defining or designating an article or compound that shall be considered as adulterated. Food is adulterated under this section : (1) If any substance or substances have been mixed with it so as to lower or depreciate or injuriously affect its quality, strength or purity. (2) If any inferior or cheaper substance or substances have been substituted wholly or in part for it. (3) If any valuable or necessary constituent or ingredient has been wholly or in part abstracted from it. (4) If it is an imitation of or is sold under the name of another article. (5) If it consists wholly or in part of a diseased, decomposed, putrid, infected, tainted or rotten animal or vegetable substance or article, whether manufactured or not, or in case of milk if it is the product of a diseased animal. (6) If it is colored, coated, polished or powdered, whereby damage or inferiority is concealed, or if by any means it is made to appear better or of greater value than it really is. (7) If it contains an added substance or ingredient which is poisonous or injurious to health.

Such are the articles which are prohibited from being manufactured or sold as food in this commonwealth. The object of the statute is to protect the public health by securing pure food and to prevent fraud and deception in the manufacture and sale of adulterated articles of food. The purpose of the legislature in the passage of the act is most commendable and the

statute should receive a construction by the courts that will fully and effectively accomplish the object of its enactment.

It will be observed that the 3d section is not directed against the manufacture or sale of adulterated food, but declares what shall be deemed and taken to be an adulteration of food. Each of the several clauses is couched in explicit and unambiguous terms. The language of the clause under which this indictment was framed is plain and admits of but one meaning. It is therefore not necessary to resort to technical rules of construction in aid of its interpretation. "Whatever may have been the legislative thought," says THOMPSON, J., in Bradbury v. Wagenhorst, 54 Pa. 182, "no ambiguity exists in what they said, and when the words of a statute are plainly expressive of an intent, the interpretation must be in accordance therewith." It is not a poisonous or injurious compound resulting from the addition of a foreign ingredient that the seventh clause declares to be an adulterated article. If it were, the position of the defendant would be correct and under the testimony in the case he would have been entitled to an acquittal. The evidence introduced on the trial and admitted by the court, however, was to show that the foreign substance added to the food product was poisonous and injurious to health. That is clearly what the clause declares shall constitute an adulteration. Its language is : "If it (the adulterated food) contains any added substance or ingredient which is poisonous or injurious to health." The terms of the clause, therefore, declare against a compound that is formed by the addition of a poisonous or injurious ingredient and not against a compound that is poisonous or injurious to health. This interpretation is supported by the plain and explicit language of the clause as well as by the manifest purpose of the legislature in its enactment. An article resulting from the addition of a poisonous substance, the legislature believed would be unhealthy and hence its manufacture and sale is forbidden by the 1st section of the act. The guilt of the defendant therefore did not depend upon the nature or character of the compound resulting from the addition of the salicylic acid to the fruit syrup, but was to be determined solely upon the poisonous or injurious qualities of the acid which was the ingredient added to the food.

The seventh clause of the act, as construed, does not offend

against any provision of the constitution of the commonwealth. It does not prevent the admixture of pure articles as a food nor prohibit the addition of a healthful ingredient as a fruit preservative. It is directed against the introduction into a food product of a substance foreign to it and of a poisonous or injurious nature. As said above, the purpose of the act was twofold: to protect the public health and to prevent fraud and deception in the manufacture and sale of adulterated food. It is within the province of the general assembly to determine whether the addition of a poisonous or injurious substance to a food article endangers the health of the citizens of the state who use the compound, and if it does, then it is clearly within the police power of the state to prohibit the manufacture and sale of the adulterated article as well as to protect the public from imposition or fraud in the sale of it. The exercise of such authority by the legislative department of the government does not transcend the constitutional limit of its power. In Powell v. Commonwealth, 114 Pa. 294, STERRETT, J., after reviewing the cases holding legislation to be constitutional on the ground that it was the lawful exercise of the police power of the state, says : " The manufacture, sale and keeping with intent to sell, may all alike be prohibited by the legislature, if in their judgment the protection of the public from injury or fraud requires it. To deny the authority of the legislature to do so, is to attack all that is vital in the police power. To refuse recognition of the power in a given case, because in the judgment of some, the legislature, though acting within its proper sphere, may have mistaken the public necessity for a law prohibitory in its character, is to make the individual judgment superior to that of the legislature, to which the people in their sovereign capacity have delegated the lawmaking power."

There was ample evidence, if believed, to warrant the jury in finding that salicylic acid is poisonous and injurious to the human system. No other conclusion would have been justified by the evidence. It is equally clear that the manufacturers of the raspberry syrup sold by the defendant were concealing its true ingredients from the public. This is manifest from the label on the bottle on which is printed : " Warranted pure and unadulterated fruit syrup." The testimony in this case discloses the fact that the syrup is not in a " pure and unadulter-

ated " condition, but that it contains an ingredient foreign to its natural state.

We are of opinion that the learned trial judge properly interpreted .the act of assembly under which this indictment was drawn, and that therefore his rulings on the admission of testimony and his answer to points for charge, which are complained of in the assignments of error, were correct.

The judgment of the Superior Court is affirmed.