## Commonwealth, Appellant, v. Kebort.

*Constitutional law—Title of statute—Adulteration of food—Drink.*

The Act of June 26, 1895, P. L. 317, entitled "An Act to provide against the adulteration of food, and providing for the enforcement thereof," which states in section 2 of said act that "the term food, as used herein, shall include all articles used as food or drink by man, whether simple, mixed or compound," is constitutional as applied to adulterated blackberry wine, and does not violate the provision of sec. 3, art. III of the constitution of Pennsylvania, relating to the title of statutes.

Argued Oct. 4, 1904.   Appeal No. 134, April T., 1905, by plaintiff, from order of Q. S. Crawford Co., Feb. T., 1904, No. 35, arresting judgment in case of Commonwealth v. F. J. Kebort and Nick Kebort.  Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER and MORRISON, JJ.   Reversed.

Indictment for selling adulterated blackberry wine.   Before THOMAS, P. J.

The jury returned a verdict of guilty, and the court arrested the judgment.

*Error assigned* was in arresting the judgment.

*A. H. Woodward*, with him *C. Victor Johnson*, district attorney, *George W. Haskins* and *John O. McClintock*, for appellant.—The act of June 26, 1895, is constitutional: Com. v. Curry, 4 Pa. Superior Ct. 356; Com. v. Geesey, 1 Pa. Superior Ct. 502; Wheeler v. Rice, 4 Brewst. 129; Yeager v. Weaver, 64 Pa. 425; Road in Phœnixville, 109 Pa. 44; Com. v. Lloyd, 2 Pa. Superior Ct. 6; Washington Borough v. McGeorge, 146 Pa. 248.

*Thomas J. Prather*, with him *Wesley B. Best*, *Otto Stolz* and *Julius Byles*, for appellees.—The words drink and food are not synonyms and cannot be used interchangeably to represent the same things. If the term food commonly includes drink in its known and popular acceptation of the term, why was it necessary in the second section of the act to define the same and legislate as to what the term food should mean or include?

The words of a statute (if in common use) are to be taken in their natural, plain, obvious and ordinary signification. The legislative intent is to be sought for through the ordinary signification of common words: Philadelphia & Erie R. R. Co. v. Catawissa R. R. Co., 53 Pa. 20; Commonwealth v. Curry, 4 Pa. Superior Ct. 356; Commonwealth v. Hazen, 207 Pa. 52.

Food is a word in common use, and should be taken in its natural, plain and ordinary meaning as it is uniformly employed in the everyday speech of the people, and the same is true of the word drink.

The sense given to particular words by our great lexicographers is always entitled to weight, yet where the word is used in act of assembly regard must be had to the circumstances surrounding its use: Penna. R. R. Co. v. Price, 96 Pa. 256.

Words not used in a technical sense nor as words of art are presumed to have been used in their known sense: Garman v. Potts, 135 Pa. 506.

OPINION BY ORLADY, J., November 21, 1904:

The defendants were convicted on an indictment framed under the Act of June 26, 1895, P. L. 317, entitled " An act to provide against the adulteration of food, and providing for the enforcement thereof." The particular offense was that

they sold an adulterated article of food, to wit: blackberry wine. The judgment was subsequently arrested by the court on the ground that the act was unconstitutional, in that its title violates section 3, article III, of the constitution, which is as follows: "No bill, except general appropriation bills shall be passed containing more than one subject which shall be clearly expressed in the title." It is urged that the title does not give notice of proposed legislation with reference to intoxicating liquors or drinks of any kind, and that blackberry wine is such an article. Nor does it give notice of any purpose or intent to legislate with reference to the sale or offering for sale of any article whatever.

The uncontradicted evidence in the case established beyond question that the defendants conducted a licensed saloon or restaurant, and sold one half pint of liquor labeled pure blackberry wine, which contained mixed therein and therewith salicylic acid, coal tar or artificial coloring dyes, tannic acid, glucose, and alcohol in imitation of pure blackberry wine; that the added substances lowered and depreciated the strength, purity, and quality of the article, made it injurious to health, and that it was not blackberry wine in the acceptation of any definition.

The sufficiency of the title to an act of assembly has been presented for consideration by the appellate courts in as varied forms as the ingenuity of counsel could suggest, and it has uniformly been held that all that is required is that the title fairly gives notice of the subject of the act so as reasonably to lead to an inquiry into its body; that it should not mislead or tend to avert inquiry into its contents; that the act should not contain two subjects, and that it is not necessary that the title should be a complete index to its contents.

In Com. v. Jones, 4 Pa. Superior Ct. 362, it is stated by our Brother SMITH, "The unity of the subject of a statute is to be determined by its paramount purpose rather than by the details through which that purpose is to be accomplished. The subject may have but one object, while the measures necessary for the attainment of that object may necessarily embrace many subordinate subjects, differing in their nature and particular effect, yet all contributing to it, and comprised within the principal subject. Everything which the nature of the subject

of a title reasonably suggests as necessary or appropriate for the accomplishment of its expressed purpose, is sufficiently indicated by such title."

In Sugar Notch Borough, 192 Pa. 349, it is held to be the rule established in all cases, " Where a general title, sufficient to cover all the provisions of an act, is followed by specifications of the particular branches of the subject with which it proposes to deal, the scope of the act is not limited nor the validity of the title impaired except as to such portions of the general subject as legislators and others would naturally and reasonably be led by the qualifying words to suppose would not be affected by the act.    This is the rule established by all our cases. . . . The express enumerations of the specific subject must be affirmatively misleading as to the intent to exclude others, or the title will not be made invalid by it. . . . It must not be lost sight of that the attitude of courts is not one of hostility to acts whose constitutionality is attacked.    On the contrary, all the presumptions are in their favor, and courts are not to be astute in finding or sustaining objections."    See also Com. v. Gilligan, 195 Pa. 504.    We cannot try the constitutionality of a legislative act by the motives and designs of the lawmakers, however plainly expressed, if the act itself is within the scope of their authority, it must stand, and we are bound to make it stand if it will, upon any intendment.    It is its effect, not its purpose which must determine its validity.    Nothing but a clear violation of the constitution, a clear usurpation of power prohibited, will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void: Com. v. Keary, 198 Pa. 500.    See also Com. v. Lloyd 2 Pa. Superior Ct. 6, affirmed in 178 Pa. 308; Com. v. Mintz, 19 Pa. Superior Ct. 283; New Brighton Borough v. Biddell, 201 Pa. 96 ; Franklin v. Hancock, 18 Pa. Superior Ct. 398, affirmed in 204 Pa. 110.

It was said in Phœnixville Road, 109 Pa. 44, " while it may be difficult to formulate a rule by which to determine the extent to which the title to a bill must specialize its objects, it may be safely assumed that the title must not only embrace the subject of proposed legislation, but also express the same so clearly and fully as to give notice of the legislative purpose to those who may be specially interested therein.    Unless it does

this it is useless : " Mt. Joy Borough v. Lancaster, etc., Turn-pike, 182 Pa. 581.

In Com. v. Kevin, 202 Pa. 23, the defendant was indicted for selling adulterated raspberry syrup; the defense being stated in the defendant's fourth point for charge, which is as follows : " The defendant in this case is indicted for selling one bottle of syrup, and if the jury should find·from the evidence that the single bottle actually sold did not contain salicylic acid in sufficient quantities to be poisonous or injurious to health, then your verdict must be for the defendant." The Supreme Court stated, " We are not prepared to adopt this construction of the clause under consideration. The purpose of the statute was to prevent the adulteration of food, the term 'food' including all articles used for food or drink by man. . . . The purpose of the legislation in the passage of the act is most commendable and the statute should receive a con-struction by the courts that will fully and effectually accom-·plish the object of its enactment. . . . The guilt of the defendant did not depend upon the nature or character of the compound resulting from the addition of the salicylic acid to the fruit syrup, but was to be determined solely upon the poisonous or injurious qualities of the acid which was the ingredient added to the food."

The second section of the act is as follows : The term " food " as used herein shall include all articles used for food or drink by man, whether simple, mixed or compound.

The comprehensive term " adulteration of food " in this title reasonably directs the attention of all persons who are engaged in the manufacture or sale of any and every article which rea-sonably may be used for or with food, in simple mixed or com-pounded form, to examine into the body of the act. When we consider that the purity, wholesomeness, adulteration, and merchantable quality of what we eat and drink has been the subject of resolute and unremitting legislation since our colonial days ; that our everyday knowledge teaches us that the terms " food " and " food products " embrace liquids and solids, ani-mal and vegetable substances, in simple, mixed and combined forms ; that our citizens represent a large number of coun-tries with diverse racial and national habits and customs in regard to their food, and the manner of preparing it for use ;

that many of our people use wine, beer, coffee, tea, cocoa and other liquids as normally and for the same purpose that they use meats or vegetables; and in regard to which there is so much social and ethical diversity of opinion; it is apparent that an inquiry into the subject of the adulteration of food is both natural and important. The same article may be an intoxicating liquor and a food, depending upon the manner and extent of its use and whether in either class it is a proper subject for legislative action; just as the same article may be a food, a medicine, or used in the arts or in commerce and still preserve its distinctive quality in each group. There are very few of our ordinary foods which are used in their natural or separate state; nearly all are prepared and combined with other articles to be made more palatable or nutritious. It was doubtful under the decisions of some courts whether an adulteration was effected by substituting or adding an inert or harmless ingredient, and to avoid futher controversy the legislature gave a definition, in the third section of the act, of the word " adulteration," which we held to be obligatory upon all.

The subject to which this act refers is " adulteration of food " which is unequivocally expressed in the title, and the reason for its enactment is as apparent as the causes inducing the act of May 15, 1893 (Com. v. Jones, 4 Pa. Superior Ct. 362), to wit: " because the lives, health, safety, and welfare of persons are not adequately secured by voluntary action." There is nothing in the second section of the act that does not pertain to the designated subject, the title is not misleading but germane to the subject mentioned in the second section and this section relates to but one subject. The subdivisions and definitions are but specifications of the particular branches of the subject with which it proposes to deal. Judge SHARS-WOOD in Com. v. Butler, 99 Pa. 535, announced the rule of construction to be " where the contention is as to the meaning of a word, as it is in this case, if any meaning, whether technical or popular, will sustain the exercise of. the power it is sufficient; on the other hand, if the strict and legal meaning would have the effect to limit and destroy, while some other popular acceptation of the word would support the legislative act, it must be resorted to. The popular sense of a technical word, if it has a popular sense broader than the technical one, must

be adopted, but not if the effect be to limit or restrain the general grant of power. . . . To doubt is to be resolved in favor of the constitutionality of the act. . . . We ought to be careful not to hamper the power of the legislature by any narrow, strained construction." See also Com. v. Moir, 199 Pa. 534.

The words "adulteration of food" in the title cannot be said to be technical, or as tending to avert an inquiry, there being eighteen popular synonyms given for the word "food" and eleven for "adulteration," (Soule) indicating a wide scope and various shades of meaning, therefore reasonably suggesting an examination into the body of the act to ascertain just what special significance they may have therein. If they have both a restricted and popular meaning an inquiry becomes the more reasonable as well as the more important.

In Com. v. Curry, 4 Pa. Superior Ct. 356, we held that this title fairly gives notice of the contents so as reasonably to lead to an inquiry into the body of the bill to ascertain the legislative definition of the word "adulteration;" and we do not enlarge the scope of that decision in now holding that by its very words it is alike sufficient to invite an examination of the legislative meaning given to the word "food." The words "or drink" in the second section do not give a separate and independent meaning to the word "food" as used in the title.

The argument of the appellee presents objections to the act which are not responsive to the assignments of error and for that reason they are not answered. The second phase of the objection to the constitutionality of the act as raised by the fourth assignment is fully answered by Com. v. Kevin, 202 Pa. 23.

The order of the court below in arresting the judgment is reversed and the record is remitted to the end that the defendant may be sentenced according to law.