## Commonwealth, Appellant, *v.* Dougherty.

*Food law—Adulteration—Evaporated peaches—External application of sulphur dioxide—Act of June 1, 1907, P. L. 386—Constitutional law.*

1. The first proviso of subsection 5 of sec. 5 of the Act of June 1, 1907, P. L. 386, violates sec. 6, art. III, of the Pennsylvania constitution relating to the amendment and extension of laws inasmuch as it attempts to introduce into the statute and make operative as a part of it an act of congress by a mere reference to its title, and also the rules and regulations that might be, from time to time, promulgated by the proper department of the federal government for the enforcement thereof. The unconstitutionality of the first proviso necessarily results in the unconstitutionality of the whole of the fifth subsection of sec. 5 of the act, because if the enacting portion of the clause were allowed to stand, persons would be drawn within the penalties provided by the statute who, the legislature declare by the terms of the proviso, should not be subject to such penalties.

2. The unconstitutionality of subsection 5 of sec. 5 of the act of 1907, does not affect the validity and constitutionality of the other subsections of sec. 5, or of any other part of the act.

3. A part of a statute may be unconstitutional and the remainder constitutional, and that which is constitutional will stand unless its provisions are so connected and dependent on each other in subject-matter that it must be presumed the legislature would not have enacted one without the other.

4. Even if the enacting clause of subsection 5 of the act of 1907 were to stand, a person could not be convicted of violating, if it appears that he had complied with the provisions of sec. 8 of the act by producing a guaranty against adulteration signed by the person residing in the United States from whom the article was purchased.

Argued Oct. 30, 1908. Appeal, No. 203, Oct. T., 1908, by plaintiff, from judgment of C. P. Clearfield Co., Dec. T., 1907, No. 210, for defendants on case stated in suit of Commonwealth v. Edward Dougherty and George Dougherty, trading as Dougherty Brothers. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Case stated in the nature of a special verdict on an appeal from a judgment of a justice of the peace. Before A. O. SMITH, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was judgment of the court of common pleas reversing the judgment of a justice of the peace.

*A. H. Woodward,* with him *Cyrus Gordon,* for appellant.— All statutes must be self-explanatory and complete in their provisions: Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627; Pittsburg's Petition, 138 Pa. 401; Donohugh v. Roberts, 11 W. N. C. 186; In re Grant Street, 121 Pa. 596.

It is well settled that a portion of an act of assembly may be void without destroying the entire act: Dorsey's App., 72 Pa. 192; Allegheny County Home's App., 77 Pa. 77; Dewhurst v. City of Allegheny, 95 Pa. 437; Rogers v. Improvement Co., 109 Pa. 109; Com. v. Shaleen, 30 Pa. Superior Ct. 1.

If the guaranty provision of the eighth section so far as it refers to the national act is not mere surplusage and void then we contend that the word "or" in said section should be read "and" and that the guaranty to avail must be a guaranty under both national and state act.

In asking that the word "or" be construed "and," we are not without precedent: Rolland v. Com., 82 Pa. 306; Murray v. Keyes, 35 Pa. 384; Foster v. Com., 8 W. & S. 77; Diehl v. Perie, 2 Miles, 47.

*Singleton Bell,* of *Bell & Hartswick,* with him *A. L. Cole, George H. Calvert* and *Samuel M. Clement, Jr.,* for appellees.— In all cases the function of a proviso is to limit and qualify the application of the affirmative enactment. It has been repeatedly held that the provision of the constitution in question refers to express amendments, etc., and not to original enactments. Admittedly this is an original enactment and refers to no other act: Com. v. Wickert, 19 Pa. C. C. Rep. 251; Com. v. Shelly, 2 Kulp, 300; Com. v. Arow, 32 Pa. Superior Ct. 1; State v. Connor, 55 S. E. Repr. 787; Coffee Compound, 17 Pa. C. C. Rep. 369; U. S. v. Cook, 84 U. S. 168; Greenfield Ave., 191 Pa. 290.

The proviso in this case must be strictly construed, and limits or restricts the application of the affirmative enacting portion of the paragraph.

If the proviso is invalid par. 5 of sec. 5 in its entirety must fall: Com. v. Shaleen, 30 Pa. Superior Ct. 1; Rothermel v. Meyerle, 136 Pa. 250; Cella Commission Co. v. Bohlinger, 147 Fed. Repr. 419; Holl v. Deshler, 71 Pa. 299; Com. v. Potts, 79 Pa. 164; Warren v. Charlestown, 68 Mass. 84.

The word "or," as used in penal statutes, can never be construed to mean "and": Buck v. Danzenbacker, 37 N. J. L. 359; State v. Kearney, 8 N. C. 53.

OPINION BY HEAD, J., May 10, 1909:

This action was begun by the commonwealth to recover from the defendants the fine imposed by sec. 9 of the Act of June 1, 1907, P. L. 386, upon any person who shall have violated any of the provisions of said act. The magistrate before whom the suit was brought entered judgment against the defendants for the statutory fine and costs. An appeal from the said judgment was allowed by the court of common pleas of Clearfield county, which court afterwards, in an opinion filed, reversed the judgment of the magistrate and entered judgment in favor of the defendants with costs. In the court below all of the material facts were agreed on by the parties, making practically a case stated for the opinion of the court on the questions of law arising upon the admitted facts.

The material facts thus agreed upon may be summarized as follows: The defendants were retail grocers doing business in the county of Clearfield, and offered for sale, and had in their possession with intent to sell, "evaporated peaches," which are articles of food. They sold to the agent of the commission of the dairy and food division of the department of agriculture of the commonwealth a portion of said "evaporated peaches," which were subsequently submitted to a chemical analysis which showed that the same had been preserved by the use of sulphur dioxide; that the peaches thus sold were taken from the box in which they had been purchased by the defendants, which box had a label thereon containing the following directions and instructions: "For the purpose of shipment the peaches contained herein are preserved by the external application of sulphur fumes which are removed by macer-

ation or soaking in water;" and the said peaches were in fact so preserved, and the preservative could have been removed by soaking in water.   No such label, however, appeared upon the paper or sack in which the peaches were wrapped when sold by the defendants and delivered to the purchaser.   The chemical analysis already referred to was made without first submitting the peaches to any process of maceration or soaking in water, as directed in the label on the box.   The sulphur dioxide shown by the analysis is not native in peaches, but is added as a preservative, and is injurious to health.   The rules and regulations promulgated for the enforcement of the act of congress approved June 30, 1906, known as "The Food and Drugs Act," permit the use of sulphur dioxide as a preservative for peaches, and the amount thereof found in the peaches sold by the defendants was less than the amount allowed by such rules and regulations.   The defendants purchased said peaches from a dealer residing in the United States, but outside the state of Pennsylvania, and received from him a guarantee in writing that said peaches were not adulterated or misbranded within the meaning of the said food and drug act, and the said guarantee was signed by the said dealer and contained his name and address.

Under the foregoing facts the commonwealth contended that the defendants had been guilty of a violation of the fifth clause or subsection of sec. 5 of the act of 1907 aforesaid, and as a consequence that the judgment of the magistrate ought to be affirmed.   The defendants defended on three grounds: (a) that they were protected from prosecution by the terms of the first proviso of the said fifth clause or subsection of sec. 5 of the act referred to; (b) that under the second proviso to the same clause they could not be convicted unless it should appear that the foreign preservative remained in the article of food after it had been subjected to the process of maceration or soaking and when ready for consumption; and (c) that under sec. 8 of the said act, the liability to prosecution, if any existed in such case, was confined to the dealer who had sold to them the peaches, and that said liability must be enforced only in the manner provided in said sec. 8.

The learned court below held that the first proviso above referred to was unconstitutional because "it is a clear violation of sec. 6 of art. III, which provides that 'no law shall be revised, amended, extended or conferred by reference to its title only, but so much thereof as is revised, extended or conferred shall be re-enacted and published at length. . . .' In our judgment, with the first proviso clause decided unconstitutional, par. 5 of sec. 5 only is destroyed, and the balance of the act is operative." Resting his conclusion on this ground, the learned court below found it unnecessary to consider the remaining defenses offered, and, as already stated, entered judgment for the defendants. The commonwealth then took this appeal.

The first section of the act of 1907 declares, "That it shall be unlawful for any person within this state to manufacture, sell, offer for sale, or have in possession with intent to sell, any article of food which is adulterated or misbranded within the meaning of this act." Sec. 5 undertakes to declare, in six separate subsections or clauses, when an article of food shall be deemed to be adulterated within the meaning of the act, and it is in the fifth of these subsections or clauses that the provisos already referred to are contained. It may be here proper to remark that this act of 1907 was evidently intended to take the place of and be substituted for the earlier Act of June 26, 1895, P. L. 317, because, in its last section, it expressly repeals the said last named act. The subsections or clauses of the fifth section of the act of 1907, however, are almost literally the same as those of the third section of the act of 1895 dealing with the same subject-matter, to wit: defining when articles of food shall be deemed to be adulterated. The enacting portion of the fifth subsection or clause of sec. 5 of the act of 1907 is in the precise language of the seventh subsection or clause of sec. 3 of the act of 1895, and is in the following language: "Fifth. If it contains any added substance or ingredient which is poisonous or injurious to health." Had the legislature stopped here, there could be no doubt as to the construction of the fifth subsection of sec. 5 already quoted. Indeed, since the case of Commonwealth v. Kevin, 18 Pa. Superior Ct. 414,

s. c., 202 Pa. 23, there would be no room for discussion as to the meaning of such a clause.  In that case MR. Justice MESTREZAT, speaking for the Supreme Court, says: "The learned trial judge held that the clause (clause 7 of sec. 3 of the act of 1895) prohibited the addition to a food product of any foreign substance, poisonous or injurious to health, regardless of the quantity used or whether or not the quantity of the substance used was sufficient to make the adulterated article poisonous or injurious to health.  In other words, it is not the quantity, but the nature of the substance added which the act prohibits. . . .  The terms of the clause, therefore, declare against a compound that is formed by the addition of a poisonous or injurious ingredient, and not against a compound that is poisonous or injurious to health.  This interpretation is supported by the plain and explicit language of the clause, as well as by the manifest purpose of the legislature in its enactment."  With this authoritative interpretation of the language of the act of 1895 before it, the legislature reconsidered the whole question in the act of 1907.

In the meantime, however, to wit: on June 30, 1906, the congress of the United States enacted a statute for the purpose of regulating this entire question in so far as it was within the domain of national legislation.  Recognizing, no doubt, the vast extent of our territory, the great diversity of the soil and climate of the different sections of the country and the consequent variety of the food products produced therein, and the practical impossibility of transporting these products from one distant section to another without the aid of some artificial preservative, the congress declared, inter alia, that the use of sulphur dioxide, in certain quantities, as such preservative would, under certain conditions, be lawful.  Our own legislature in 1907, legislating with the knowledge of the construction of the act of 1895, adopted by our own Supreme Court and of the act of congress referred to, was not content to simply re-enact the provision of the act of 1895, and thus leave the situation as it was before; but evidently sought to bring our legislation as nearly as possible into harmony with that enacted by the general government, and to relieve dealers in Pennsylvania from some of the hardships that would follow an enforcement of the

act of 1895, as it had been construed by the courts. It accordingly declared, "that for the purpose of this act an article shall be deemed to be adulterated. . . . Fifth. If it contains any added substance or ingredient which is poisonous or injurious to health: Provided, however, that no action shall be brought or sustained for violation of the provisions of this section when the article alleged to be adulterated is not adulterated within the meaning of the provisions of the 'Food and Drugs Act' of June 30, 1906, enacted by the Senate and House of Representatives of the United States of America in Congress assembled, and the rules and regulations promulgated from time to time for the enforcement of the same: And provided further that when in the preparation of food products for shipment, they are preserved by any external application, applied in such manner that the preservative is necessarily removed mechanically or by maceration in water or otherwise, and directions for the removal of said preservative shall be printed on the covering of the package, the provisions of this act shall be construed as applying only when said products are ready for consumption."

The commonwealth rests its contention that the defendants in this case were properly fined on the ground that in selling, or having for sale, a food article containing "any added substance or ingredient which is poisonous or injurious to health," to wit: sulphur dioxide, they were doing what was prohibited by the enacting clause of the fifth subsection of clause 5 of the act of 1907. In other words, they occupied the same position as if the sale complained of had been made whilst the act of 1895, as construed in Commonwealth v. Kevin, 18 Pa. Superior Ct. 414; s. c., 202 Pa. 23, was still in force.

It is manifest that this position is untenable as long as the first proviso above referred to is permitted to stand, because, it is agreed, that the peaches in question were not adulterated within the meaning of the provisions of the "Food and Drugs Act" enacted by congress, and therefore, under the terms of the proviso, no action can be brought or sustained for such adulteration. The commonwealth must, therefore, at the same time, uphold the enacting clause of subsection 5, and expunge

from it the qualifying proviso in order to maintain its position. The learned court below held, and we think properly, that, under our constitution, our legislature could not introduce into a statute, and make operative as a part of such statute, an act of congress, by a mere reference to its title. Much less could it inject bodily into the same statute all of the rules and regulations that might be, from time to time, promulgated by the proper department of the government for the enforcement thereof. The soundness of this position seems to us to be so manifest as to require no argument to sustain it. The language of sec. 6 of art. III of our constitution is clear and plain. No one would contend that a former act of our legislature, or the rules and regulations of any department of our state government, could be incorporated into an act of assembly by a mere reference to the title of the former or the general designation of the latter contained in the proviso.

In Titusville Iron Works v. Keystone Oil Company, 122 Pa. 627, Mr. Justice WILLIAMS said: "But the constitution of 1874, sec. 6 of art. III, already referred to, requires all statutes to be self-explanatory and complete in their provisions, and forbids the extension, amendment, revival, or the use of any other method of conferring the benefits of previous legislation short of a re-enactment at length." Innumerable cases reiterating this doctrine could be cited if necessary.

We must next consider to what extent the act of 1907, viewed as a whole, is affected by striking from it the unconstitutional proviso. It is clear, we think, that at least the whole of subsection 5 of the fifth section of the act must fall. As we have already seen, the enacting portion of this clause or subsection is precisely the same as that of subsection 7, sec. 3 of the act of 1895. If, notwithstanding the construction placed upon that act in Commonwealth v. Kevin, 18 Pa. Superior Ct. 414; s. c., 202 Pa. 23, and the passage of the act of congress of June 30, 1906, our legislature had been willing to continue the same policy that followed from the earlier act, it would have stopped with the enacting portion of clause 5, sec. 5 of the act of 1907. The very fact that it incorporated the proviso, along with the enacting clause in that subsection,

clearly indicated its intention to withdraw from the advanced position previously taken and bring the legislation of this state, on this subject, in harmony with that adopted by the general government. If, therefore, we strike down the proviso, but allow the enacting portion of the clause to remain, we draw within the penalties provided by the statute those whom the legislature declared, by the terms of the proviso, should not be subject to such penalties.

We are necessarily led to the conclusion, therefore, that the whole of the fifth clause or subsection of sec. 5 must be stricken down. The only theory upon which the learned and ingenious counsel for the commonwealth urges us to declare the enacting clause operative, but the proviso inoperative, is that the latter is wholly unintelligible; that "it might as well be Greek or other dead language so far as the average citizen is concerned. It is surplusage. . . . It is as though it consisted of unintelligible strokes and marks, meaningless and void. It is a mere blot upon the statute. It does not affect either preceding or succeeding language. It may be removed without destroying unity and without sacrificing intelligibility."

We are unable to accept this theory as sound. It seems clear to us that the proviso is sufficiently intelligible, and unmistakably indicates that the legislature intended to withdraw, from the sweep of the earlier enacting clause, those who would be within the shelter of the provisions of the act of congress.

But it does not follow that the whole of the act, or even the whole of sec. 5 of the act, must be declared void. The rule on this subject is well stated by HENDERSON, J., in Commonwealth v. Shaleen, 30 Pa. Superior. Ct. 1, in the following language: "It is a familiar rule that a part of a statute may be unconstitutional and the remainder constitutional, and that that which is constitutional will stand unless its provisions are so connected and dependent on each other in subject-matter that it must be presumed the legislature would not have enacted one without the other." Many cases are there cited in support of the principle which is indeed so familiar that it needs no citation of authorities to sustain it. Looking then at

the whole of sec. 5, we cannot see that the proviso, which we now declare void, was intended to operate upon anything except the enacting clause of the fifth subsection or paragraph of that entire section. As previously stated, the section as a whole is subdivided into six subsections or paragraphs relating to articles of food, and one to articles of confectionery. Had the proviso been intended to operate upon everything covered by the entire section, its natural place would have been at the end of the section following all of the enacting portions of it. As already stated, however, it appears in the fifth subsection, and it seems to us that its operation may fairly be confined to that subsection.

Moreover, we are advised by counsel, in their printed briefs, that all of the other paragraphs of sec. 5 are in harmony with the national act, and the proviso, as to them, would therefore be needless. But the enacting clause of subsection 5, standing alone, would not be in harmony with the national act, and hence the necessity of the proviso. The only objection, we think, that can be successfully advanced to this construction, is the fact that it will leave the act with a gap in it, a casus omissus. This, however, does not furnish to our minds any satisfactory reason for striking down the act as a whole. Every other part of it we think may stand and be operative without the fifth subsection of sec. 5, and if this be true, it is our plain duty so to hold. If that results in leaving the act less perfect and comprehensive than it was intended to be, the remedy is with the legislature.

Even if, however, it were possible to allow the enacting clause of subsection 5 to stand, and at the same time strike down the qualifying proviso, we think the court below was nevertheless right in reversing the judgment of the magistrate, because the defendants, under the facts of this case, were further protected by the provisions of sec. 8 of the act. That section provides that: "No prosecution shall be sustained under the provisions of this act for the selling, etc., of any article, when the same is found to be adulterated within the meaning of this act, when the accused can show a guarantee signed by the person, residing in the United States, from whom

such article was purchased, to the effect that the same is not adulterated within the meaning of this act, designating it, or within the meaning of the 'Food and Drugs Act' of June 30, 1906, etc." The section goes on to provide the manner in which the accused vendor and guarantor may be punished. If residing in this state, he is of course amenable to the process of this state. If residing in some other state of the Union, the section provides that his name and address, as contained in his guarantee, shall be forwarded, by the dairy and food commissioner of this state, to the secretary of agriculture of the United States, or the proper officers appointed for the enforcement of the act of congress. The design of the legislature is, we think, thus plainly apparent. It is not, primarily, to punish those who, innocently pursuing a lawful business, according to the usual channels of trade and within the regulations adopted by the national government, shall purchase some article of food that might be deemed to be adulterated within the provisions of our own act of assembly on the subject; but to more effectually break up such traffic by the punishment of the general dealers in whose establishments the wrongdoing originates. For this reason also, we are constrained to hold that the learned court below was right in reversing the judgment of the magistrate and entering judgment in favor of the defendants.

Judgment affirmed.