## McMullin v. Phillips.

*Sales—Promise to repurchase—Statute of frauds—Act of May 19, 1915.*
1. A promise to repurchase, made by one who is selling the goods of another, if the value of the goods is in excess of $500, is within the 4th section of the Sales Act of May 19, 1915, P. L. 543, and no action can be maintained thereon unless the promise is in writing, signed by the party to be charged, or his agent in that behalf.

*Sales of choses in action—Statute of frauds—Sales Act of May 19, 1915—Constitution, art. iii, sect. 3.*
2. The 4th section of the Sales Act of May 19, 1915, entitled "An act relating to the sale of goods," which forbids suits upon oral contracts for the "sale of goods or choses in action" of a value in excess of $500, is unconstitutional in so far as it relates to choses in action, since that subject is not "clearly expressed in its title," as required by article iii, section 3, of the Constitution.

Motion to take off non-suit. C. P. No. 2, Phila. Co., Sept. T., 1922, No. 7329.

*Joseph R. Embery,* for plaintiff; *Arno P. Mowitz,* for defendant.

GORDON, JR., J., June 23, 1924.—This is a motion to take off a non-suit. The plaintiff brought suit against the defendant, a broker, upon an alleged oral promise of the latter to buy back from the plaintiff certain corporate stock, sold to him by the defendant, at any time the plaintiff should be dissatisfied with his investment. This promise to repurchase the stock is alleged to have been made contemporaneously with its sale. The plaintiff testified that the defendant represented to him that, though the company whose stock he bought

4 D. & C.

was just starting in business, its prospects were good, and urged him to invest in it. He, therefore, bought between $4000 and $5000 worth of the stock, having received the defendant's promise to buy it back from him if he should thereafter be dissatisfied.

The defendant set up as a defence that the promise to buy back being oral, and being for the sale of stock of the value of more than $500, it came within the provisions of the 4th section of the Sales Act of May 19, 1915, P. L. 543, which requires contracts for the sale of goods or choses in action to a value in excess of $500 to be in writing, "unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment." In reply, the plaintiff contended that it has been uniformly held that an oral agreement to repurchase, made at the time of the original sale and which is a part of the terms of the sale, is within the exception to the prohibition of the act, and can be made the basis of a suit. With this contention we agree: 1 Uniform Acts Annotated, 26; Armstrong *v.* Orler, 220 Mass. 112. It is equally well settled, however, that a promise to repurchase, made by one who is selling the goods of another, is within the statute, and cannot be sued upon where the value of the goods is in excess of $500, unless it be in writing, signed by the party to be charged or his agent in that behalf: Bernhardt *v.* Walls, 29 Mo. App. 206; Boardman *v.* Cutter, 128 Mass. 388; Leach *v.* Weil, 129 N. Y. App. Div. 688; Morse *v.* Douglass, 99 N. Y. Supp. 392. The reason for this distinction is clear. The owner of goods receives the consideration for the sale and all the benefits of the transaction, and his promise to buy back is supported by a consideration moving to himself. A mere broker or agent, on the other hand, who makes his own independent promise to repurchase, does not receive the consideration. His promise is distinct, independent and additional to the sale in which he is but an intermediary.

Where the promisor is also the owner and vendor of the goods, the whole transaction is one, and the delivery of his goods in the original sale brings him within one of the exceptions in the act, he thus being a buyer who has "given something in earnest to bind the contract." Where the promisor, however, is a mere agent in the original transaction, he does not fall within any of the exceptions, for in each case he, the buyer, did not "accept part payment of the goods or choses in action so contracted to be sold or sold, or actually receive the same, or give something in earnest to bind the contract, or in part payment." It was to protect one in such a position, whose independent promise is unsupported by any consideration received, and who, therefore, is at the mercy of fraudulently-disposed persons, that the statute of frauds in sales of personalty was designed.

The latter situation is the one which the evidence shows to have existed in the present case. The stock sold by the defendant was the property of the company in which the plaintiff invested and the purchase money was paid by the defendant to it. The only evidence upon this point was furnished by the defendant himself, and would have taken the case to the jury had it not been offered by the plaintiff, who called the defendant on cross-examination. In this manner it became the plaintiff's evidence, subject to be contradicted by other testimony, but by which he is bound unless he does contradict it. A plaintiff is not required to call a defendant, but if he chooses to do so in order to fill a gap in his proofs, he adopts his adversary's testimony as his own, and, unless he contradicts it, it is his evidence and the only evidence in the case.

Having thus shown that the oral promise sued upon was within the statute on the issue as presented at the trial, the plaintiff was properly non-suited.

Since the trial, however, a new and different question of law has been raised which requires us to take off the non-suit. The plaintiff now contends that so much of the 4th section of the Sales Act of May 19, 1915, P. L. 543, as requires sales of choses in action to a value in excess of $500 to be in writing is unconstitutional, as being in violation of article III, section 3, of the Constitution of Pennsylvania, which requires an act of the legislature to contain but one subject, "which shall be clearly expressed in its title." After a careful consideration of the question, we are satisfied that section 4 of the act is unconstitutional in this limited respect.

The title of the Sales Act of 1915 is, "An act relating to the sale of goods," and the 4th section forbids suits upon oral contracts for the "sale of goods or choses in action" of a value in excess of $500. The question presented is whether the word "goods," as used in the title of the act, is sufficiently comprehensive to include sales of choses in action, and, therefore, sales of corporate stock, which has been held in this State to be a chose in action: People's Bank v. Kurtz, 99 Pa. 344 (where Mr. Justice Sharswood said: "Shares of stock in a corporation are choses in action, giving a right to dividends and an interest in the capital. The certificate is the evidence of such ownership"); Centennial and Memorial Association of Valley Forge, 235 Pa. 206; Neiler v. Kelley, 69 Pa. 403; Callery's Appeal, 272 Pa. 255. See, also, Cates v. Baxter, 97 Tenn. 443. We are of opinion that the word "goods," as used in the title, does not comprehend a chose in action. Certainly the legislative intent did not include it within the meaning of that word, for had such been the case there would have been no need to use the added words "choses in action" and the disjunctive "or" in the 4th section. Indeed, in the defining section of the act, the 76th, choses in action are expressly excluded from the definition of "goods," it being there provided that " 'goods' shall include all chattels personal except things in action and money." How, then, can a chose in action be said to be clearly expressed in the title of the act? If we apply the test for determining this constitutional question laid down in Com. v. Curry, 4 Pa. Superior Ct. 356, repeated in Com. v. Kebort, 26 Pa. Superior Ct. 584, and in many other cases decided by our higher courts, i. e., to determine whether the title of the act "fairly gives notice of the contents so as reasonably to lead to an inquiry into the body of the bill to ascertain the legislative definition of the word" used, we find that choses in action are logically, and even expressly, excluded from the subject-matter of the legislation. The purpose of the constitutional provision was to prevent surprise and fraud in misleading titles, and to enable those affected by legislation to know what acts relate to them and their activities by the simple method of fairly reading the titles of the various acts passed by the legislature. Dealers in stocks and other choses in action, therefore, reading the simple title of this act, "An act relating to the sale of goods," and then turning to the section defining the meaning of goods, and finding that the commodity in which they deal is excluded from the meaning of that word, would be fully justified in reading no further. Here at the very threshold of the act they are turned aside and invited to read no further. Can it, therefore, fairly be said that this title gives notice to persons dealing in stocks that their sale is to be dealt with and regulated? We think not.

In reading the act as a whole, and considering its provisions and scope, one is forced to the conclusion that the sale of corporate stock was never intended to be regulated by it. It contains far-reaching and elaborate regulations for the sale of goods, which are utterly inapplicable to the sale of corporate securities. In none of its many sections are choses in action mentioned, except in the fourth. Not a single regulating provision is applied to choses

in action, and many of them are impossible of application by reason of the very nature of this kind of personal property; for example, the provisions respecting warranties, sales by sample, the reservation of the right of possession when goods are shipped, sales by auction, the right of stoppage *in transitu,* and many others which might be mentioned.

The whole act, from the first section to the last, is built around the idea of regulating the sale of property which is susceptible of the kind of regulation there prescribed; and it is difficult to see how property incapable of such regulation, except in respect to the prohibition of the 4th section, can be said to be included within the subject of the act as expressed in its title. Choses in action are tacked on to the 4th section, apparently as an afterthought. They have no place in the act as a whole, and may fairly be said to be different in subject-matter from the rest of the act. We are, therefore, forced to the conclusion that the 4th section of the Sales Act of 1915 is unconstitutional, in so far as it relates to choses in action, and the motion to take off the non-suit is, therefore, granted.