## Commonwealth v. DeMassa

*J. Stroud Weber*, assistant district attorney, for Commonwealth.

*Edward M. Hawes*, of *Wright, Mauck & Hawes*, for defendant.

KNIGHT, P. J., September 3, 1943.—Defendant was charged with a violation of paragraphs 1 and 2 of section 4 of the Act of May 13, 1909, P. L. 520, as amended by the Act of June 1, 1937, P. L. 1127. The gist of the charge is that defendant sold a misbranded article, namely, a bottle of oil. He was convicted of the charge before a justice of the peace and fined $60 and costs. With leave of this court, he appealed, and hearing was held before the writer of this opinion.

The evidence of the Commonwealth developed the facts hereinafter set forth. Defendant offered no evidence.

On January 18, 1943, H. Welsh Shive, a food agent of the Department of Agriculture of the Commonwealth, went to the grocery store of defendant, in Bridgeport, this county. Defendant was not in at the time, and the store was in charge of his daughter, Rose. Mr. Shive identified himself as an agent of the Department of Agriculture, and stated he wished to make an inspection of the store, which he proceeded to do. The agent asked for a bottle of "olive oil", and indicated the bottle on the shelf that he desired. This bottle contained soya bean oil, and had on it a label on which was written, in letters of equal size, certain words, arranged as follows:

> SUZANNE
> IMITATION
> OLIVE OIL
> FLAVORED
> SOYA BEAN OIL

In slightly smaller type underneath were the words:

> Contains Soya
> Bean Oil, Butyric
> Acid, Esters, Artifi-
> cial, Color Added
> Chlorophyll

Rose DeMassa handed him the bottle of oil, for which he paid 15 cents. A similar quantity of pure olive oil would cost, at that time, at least 25 cents. The head chemist of the Bureau of Foods and Chemistry testified that he had examined the contents of the bottle, that it contained no olive oil, and that the ingredients of the fluid in the bottle were correctly set forth on the label.

Section 4 of the Act of 1909, supra, as amended, provides:

"That for the purpose of this act, an article shall be deemed to be misbranded,—

First. If it be an imitation of, or offered for sale under, the name of another article.

Second. If it be labeled or branded so that it may deceive or mislead the purchaser. . . ."

The label is somewhat confusing. At first blush, the average careless reader might believe that the bottle contained imitation olive oil. A reading of the label, however, would make it clear to the average careful reader that it was the flavoring that was the imitation, and not the oil in the bottle. The testimony bears out the label that it is the flavoring that is the imitation of olive oil flavor.

It is the contention of the Commonwealth that, under the first paragraph of the act, any article of food, sold as an imitation of another, is misbranded, no matter how openly and plainly it is labeled, advertised, and offered for sale as an imitation. We are of the opinion that this is a strained construction of the act, particularly in these days of substitutes and synthetic products. If the imitation is for the purpose of deceiving the public, then, of course, it comes within the scope of the act. But if the article is plainly and openly branded as an "imitation", we do not think it can be termed misbranded.

The flavor of olives is a distinct flavor, and we do not think it unlawful if our chemists seek to obtain an imitation of this flavor, provided always there is nothing done to deceive the buying public into believing the flavor was made from real olives. As was said by our Supreme Court, in speaking of an earlier and similar act, the Act of June 26, 1895, P. L. 317, in Commonwealth v. Kevin, 202 Pa. 23, 27 (1902) :

"The object of the statute is to protect the public health by securing pure food and to prevent fraud and deception in the manufacture and sale of adulterated articles of food."

Said the United States district court, in speaking of the Federal Food and Drugs Act, in United States v. Thirty-six Bottles of London Dry Gin et al., 210 Fed. 271, 272 (1914) :

"The act strikes at deceiving the public by selling them one thing when they desire to purchase another. As has been frequently said by courts, the purchaser has the right to choose for himself what he will purchase, and, when he has purchased, the right to receive that which he desires and not something else."

There is not a scintilla of evidence that the substance contained in the bottle purchased in defendant's store was in any way injurious to health, so that aspect of the case drops out.

The second paragraph of section 4 of the Act of 1909, supra, as quoted in part above, is designed to protect the public from being imposed upon by false and deceptive labels. We do not see how any person of ordinary intelligence could be deceived or misled by the label in this case. The first word that strikes the eye, after the trade name "Suzanne", is "Imitation"; whether he thought he was buying an imitation olive oil, or soya bean oil, flavored with an imitation of olive oil, he would know, or should know, that he was buying an imitation. This would put him on notice, and his eye would naturally drop to the ingredients printed on the same small label. This would show that the bottle contained no olive oil. The price of the bottle of oil, and the color of the oil, would also convey to any purchaser familiar with olive oil the knowledge that he was not buying olive oil.

We find that the oil in this case was not so labeled and branded as to deceive the purchaser.

And now, September 3, 1943, after full hearing, defendant is found "not guilty" and discharged. The costs are placed on the county.