## Foster Township Road Tax.

*Constitutional law—Delegation of legislative power—Local and special
legislation—Road law—Work tax.*

The proviso of section 2 of the Act of April 12, 1905, P. L. 142, pro-
viding for the abolition of the work tax on roads at the election of the
taxpayers in a township, does not violate article II, section 1, of the
constitution, which provides that "the legislative power of this Com-
monwealth shall be vested in a General Assembly which shall consist
of a Senate and a House of Representatives;" nor does it violate arti-
cle III, section 7, of the constitution, which declares that "the General
Assembly shall not pass any local or special law regulating the affairs
of counties, cities, townships, wards, boroughs, or school districts."

Argued April 19, 1906. Appeal, No. 42, Oct. T., 1906, by
E. B. Sage et al., from order of Q. S. McKean County, Dec. T.,
1905, No. 24, dismissing petition for an election under act of
April 12, 1905, In the Matter of the Petition of the Citizens
of Foster Township. Before RICE, P. J., PORTER, HENDER-
SON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Petition for an election under Act of April 12, 1905, P. L.
142.

The opinion of the Superior Court states the case.

*Error assigned* was the order of the court.

*Thomas F. Richmond,* with him *D. H. Jack* and *Sheridan
Gorton,* for appellant.—A subsequent statute revising the whole
subject-matter of a former one, and evidently intended as a
substitute for it, although it contained no express words to
that effect, must, on the principles of law, as well as in reason
and common sense, operate to repeal the former: Common-
wealth v. Cromley, 1 Ashm. 179 ; Nusser v. Com., 25 Pa. 126;
McCleary v. Allegheny County, 163 Pa. 578 ; Com. v. Grier,
152 Pa. 176 ; Martz's Election, 110 Pa. 502 ; Johnston's Est.,
33 Pa. 511; Com. v. Meanor, 167 Pa. 292.

The act of 1905 having expressly repealed the act of
1834, and it being a general act applying to all townships of

the second class within the commonwealth, we contend that the right to work out the road tax is necessarily taken away from the taxpayers and it can only be taken advantage of when a township, by a majority vote of its electors, say that they desire to give to the taxpayers the right to work out all or a portion of their road taxes.

The act provides a new and complete system; it provides how taxes shall be levied, assessed and collected in cash, and we are unable to see how there is any delegation of legislative authority in any portion of the act: Lock's App., 72 Pa. 491; McGonnell's License, 209 Pa. 327.

We submit that the case of Frost v. Cherry, 122 Pa. 417, does not rule, or even apply to the case at bar, for the reason that the act of 1885 could only become effective after a vote of the people in each county; while the act of 1905 became a complete act and in full force the moment it was signed by the governor, and only left to the people the right to change the system of taxation for working the public roads at the pleasure of a majority of the taxpayers of each township, and in nowise delegated or authorized the taxpayers to determine whether or not the act of 1905 should become a law: Com. v. Middleton, 210 Pa. 582; Com. v. Guthrie, 203 Pa. 209; Com. v. Brown, 210 Pa. 29; Lehigh Valley Coal Co.'s App., 164 Pa. 44; Middletown Road, 15 Pa. Superior Ct. 167.

No appearance nor paper-book for appellee.

OPINION BY HEAD, J., October 23, 1906:

On December 11, 1905, a petition, signed by more than twenty-five taxpayers of the township of Foster in the county of McKean, was presented to the court of quarter sessions of that county, praying the court to order an election, at the coming February municipal election, to determine whether the road taxes of that township should be thereafter paid wholly in cash. The authority to make such an order is alleged to have been conferred on the several courts of quarter sessions by the proviso to sec. 2 of the Act of April 12, 1905, P. L. 142.

A rule to show cause was granted, but the court, in an opinion filed on January 15, 1906, discharged the rule and dismissed the petition, holding that the proviso above referred to,

under which the proceeding was begun, was unconstitutional
and void.

·The first ground on which the learned court below bases
the conclusion reached is that the provision of the act author-
izing an election, to ascertain the will of the people as to
whether the taxes should be paid in one form or another, and
then providing that, contingent on the fact thus ascertained,
the taxes shall be paid wholly in cash, or partly in cash and
partly in work as at present, is a clear delegation by the legis-
lature of its legislative powers and, therefore, a violation of
article II, sec. 1, of the Constitution, which provides : " The
legislative power of this Commonwealth shall be vested in a
general assembly, which shall consist of a senate and a house
of representatives."

Fortunately for us the exposition of this highly important
constitutional provision by our Supreme Court has been so
thorough and exhaustive as to leave for us only to apply, to
the legislative enactment now before us, the principles already
enunciated by the highest authority for our guidance. Meas-
ured by the standards thus furnished, let us glance at the act
of 1905 and seek to discover wherein can be found any attempt,
on the part of the general assembly, to abdicate and delegate
to another the legislative power which can be constitutionally
exercised only by itself. The act is an important and compre-
hensive piece of legislation. By its terms it applies to every
township of the second class in the state, thus bringing within
its scope by far the greater portion of the territorial area of
the entire commonwealth. It has for its object an improvement
in the methods of constructing and maintaining those highways
which ought to be such important factors in the speedy dis-
semination of intelligence among the people, and the rapid and
easy transportation of their persons and property, without
which, a civilized municipal community can no more thrive and
flourish, than could a human body without veins and arteries
for the prompt transmission of the blood from heart to brain
and limbs.

Did not the act, upon its approval by the governor, become
immediately effective in every township of its class throughout
the commonwealth ? Did it need or invite the aid of any other
power or authority to make its commands and prohibitions

binding and obligatory on every municipality, officer or tax-payer within the sweep of its provisions? Did the law come from the hands of its creator, the legislature, in a state of suspended animation, thus to continue, until some affirmative act of Foster township or its taxpayers gave to it the force and vitality of a living enactment?

It was not the purpose of the petition in this case, it could not have been the result of the order therein prayed for, to bring Foster township for the first time within the purview of the act of 1905. Without the filing of the petition that township, like all others of its class, must have lived, moved and acted in accordance with the legislative command. At the February election of 1906 it must have chosen the road officers designated by the statute; it could not have lawfully selected any others. They would have been clothed with all the powers conferred by the act and could have exercised none other. The same road taxes must have been levied, collected and expended in Foster township as in all others of its class, and in all these respects the legislative will, as expressed in the statute, and it alone, would have guided, controlled and harmonized all.

If, then, it was not the purpose of the petition in this case to bring the township within the operative force of the statute, it is equally clear it could not have been its object to nullify the act, or any of its provisions, within the same limits.

The sovereign power of the state had placed the yoke of the legislative will upon all townships of the second class without the aid or assistance of any other authority, and only to that same supreme power could an appeal be successfully made for relief from the obligations thus imposed.

What, then, was the aim of the petition, what the result expected from the proceedings thus instituted? For many years, under our laws, there have been two recognized methods in which road taxes may be paid, viz: wholly in cash, or partly in cash and partly in work done at the instance and under the direction of the supervisor. Each individual taxpayer exercised the right of adopting one or the other of the alternative modes of paying. But it would hardly be contended he conferred this right on himself. He simply determines which of two methods of payment, each of which has been declared by the legislature to be lawful, will promote his welfare or con-

venience. So the act of 1905 still recognizes the same two methods of payment of road taxes. It still leaves to the taxpayer the ascertainment and determination of a fact, viz: his own preference as to the manner of payment, but does not leave him any control over the consequences that follow the ascertainment of the fact. These are defined and declared by the law. The act of 1905, instead of leaving to each individual in every case, the final expression of his preference as to the manner of paying his road taxes, provides the machinery by which the will of all the taxpayers in a township, on the same subject, may be ascertained in bulk. With the expression of the common will as to this single fact every power given to the voters has been fully exercised. No matter which method of payment the popular will may favor, the contingency had been foreseen and provided for in the act as it came from the legislature. It is difficult to see in this anything resembling a delegation to any person or persons in any township of the power to legislate ; to add to or to take from the body of the statute a line or letter ; to extend its operation over or paralyze its force within a single foot of territory.

We regard Locke's Appeal, 72 Pa. 491, as decisive of this question. The reasoning of the opinion in that case is so elevated and convincing, its illustrations so apt and striking, its language so luminous and forceful that, to our minds, the conclusion reached is unassailable. We can discover no intention on the part of the court to depart from the position there taken. In the recent case of McGonnell's License, 209 Pa. 327, the court, construing the Act of April 28, 1899, P. L. 68, and speaking through Mr. Justice BROWN, said: " We are relieved from any further discussion of the question before us, for it is directly decided in Locke's Appeal, 72 Pa. 491, and it would be a work of supererogation to attempt to say anything more, in view of what is there said." See also O'Neil v. Ins. Co., 166 Pa. 72.

A careful comparison of the act of 1905 with the several statutes that have been declared unconstitutional by the courts, in a line of cases familiar to the profession, would easily reveal, we think, the distinction between them, and demonstrate that the conclusion here reached is not controverted by any of the decisions, but it would unnecessarily lengthen this

opinion.    Standing, as we do, on Locke's Appeal and the reasoning that supports the judgment there rendered, we cannot escape the conclusion that the learned court below was in error in holding that the proviso to section 2, of the act of 1905, amounts to a delegation of legislative authority and was, therefore, unconstitutional and void.

But the learned court also held the proviso in question to be an abortive legislative effort because it was in conflict with sec. 7 of article III of the Constitution, which declares that "the General Assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts."

Since the adoption of the new constitution the right of the legislature to properly classify subjects of legislation has been frequently declared and is now firmly established.    When this right has been exercised and a legitimate classification made, a statute that applies equally to every individual, municipality or member of a designated class, is not a local or special, but is a general law.    By the Act of April 28, 1899, P. L. 104, all of the townships of the state were divided into two classes called respectively townships of the first and second class, the basis of classification adopted being density of population.    This act has been decided to be constitutional and the classification thereby created to be a proper exercise of legislative power: Com. ex rel. Jones v. Blackley, 198 Pa. 372; Coal Township, 16 Pa. Superior Ct. 260; Phila. & Reading Coal & Iron Co.'s Petition, 200 Pa. 352.    The legislature may therefore freely enact laws applicable only to townships of the second class, and such statutes cannot be successfully assailed, on that account, as local or special legislation.    If we are to determine the scope of a legislative act solely from a consideration of the language used in the statute itself, there would be no room to doubt that the act of 1905 embraced, within its provisions, every township of the second class in the commonwealth.    It so expressly declares.    But an act constitutionally sound, if judged only by the general terms employed, may nevertheless contain the seeds of its own destruction, if it clearly appear that, as a result of its practical operation, some members of the class affected may be excluded or may exclude themselves from the obligation to obey its commands.    In such case we would have

an act general in name, special in fact. It would be "special legislation under the attempted disguise of a general law. Of all forms of special legislation this is the most vicious : " Scowden's Appeal, 96 Pa. 422.

Can it fairly be said then that, by the exercise of the privilege conferred on them by the proviso in question, the voters of any township of the second class in the state may bring about the result that they live under one law, whilst in all other townships of the same class where no election was had, another and different law prevailed ? It is true the act uses the expression that they may " change the system of taxation for working the public roads." If by this there was given to the voters of one township the right to change from a system of taxation devised by the legislature to one devised by themselves, then indeed we would have legislation both local and special, as each township could be relied on to produce the necessary crop of statesmen and lawmakers. But no such right is conferred. As we have attempted to show, the law recognizes for every township two lawful methods of paying the road taxes. In every township the one method or the other is prescribed dependent on the ascertainment of a certain fact. That fact ascertained in one way, one method of payment follows as the direct result of the legislative will formally expressed; ascertained in the other way or not ascertained at all, and the other method of payment follows in the same way. If such a result must destroy every statute of which it may be predicated, the wheels of government would be blocked. We have already seen that under long-existing laws one taxpayer avails himself of the supposed privilege of paying his road taxes partly in cash and partly in work; his neighbor prefers to pay wholly in cash. Thus each may pay in a different way. But both ways are prescribed by a law which has never been thought to have lost its character as a general law on that account. One citizen pays his ordinary taxes within a limited number of days after their assessment and thus secures a substantial reduction in the amount paid; his neighbor, not availing himself of that privilege, is required to pay the full amount assessed. Thus it happens, in actual practice, that one pays at a less rate on his valuation than the other. But both live under the same law, and it is a general, not a special law, notwithstanding this

diversity in the results of its practical operation. But why extend the argument or multiply the instances that illustrate it?

In Lehigh Valley Coal Co.'s Appeal, 164 Pa. 44, the Act of June 12, 1893, P. L. 451, was declared to be constitutional. That act authorized any one or more taxpayers in any township to contract with the township authorities for the maintenance of the roads therein and the payment of salaries to the road officers, thereby preventing the levy and collection of any road tax in such township. Naturally enough in townships where the area was small and a few individuals or corporations were heavy taxpayers, the privilege thus extended to all would be accepted ; in other townships where different conditions prevailed it would be declined and the old plan followed. By reason of the lack of uniformity in the method of maintaining the public roads in the different townships that would thus probably or possibly follow the practical operation of the act, it was attacked as a violation of sec. 7, art. III of the Constitution. In upholding the validity of the act Mr. Justice DEAN says : " But there is not a single township in the state which does not come under this law. If the act had been the first one passed on the subject, and had enacted that, in all the townships of the state, public roads should be made and kept in repair by the supervisors : (1) By the assessment of a money tax, collected and expended by them ; (2) or by the labor of taxpayers of each township to the value of their tax ; (3) or by contract of supervisors with a taxpayer or taxpayers—the law would, unquestionably, have been general. But, there being three different methods of doing the same thing, the roads might have been made and repaired in three different ways by three adjoining townships. The duty of each township would have been the same, to make and repair the roads within its boundaries ; the object of the law, with respect to each, would have been the same, to secure reasonably good roads. That any township might adopt any one of three lawful methods to effect the general purpose, it seems to us, could not change its general character. Here, not a single township is excluded from the operation of the law because of any local peculiarity. That taxpayers will differ in opinion as to benefits from it, and, in consequence, some townships will adopt the

new method, while others adhere to the old, is not a local re-
sult, but merely an exhibition of the tendency of the human
mind to reach different political conclusions from the same
facts."

We think it would puzzle the wit of man to distinguish this
case, in principle, from the one before us. It was followed by
this court in Middletown Road, 15 Pa. Superior Ct. 167, and has
never been departed from in any case brought to our attention.
We again follow it, and in doing so necessarily reach the con-
clusion that, in enacting the statute we have been considering,
the legislature did not go outside its constitutional powers.

We do not regard the case of Frost v. Cherry, 122 Pa. 417,
as in conflict with any of the cases cited or the conclusion
herein reached. The Act of June 23, 1885, P. L. 142, there
held to be unconstitutional, contained but a single enacting
clause, viz: the first section providing for a repeal of the act
of 1700, commonly known as the "Fence Law." If by the
terms of the act that section did not become operative, solely
by the force of the legislative will, then there was no complete
exercise of legislative power by the general assembly. If it
expressly required and invited the aid and co-operation of some
auxiliary power before it became effective on any member of
the class designated, then, according as such aid should be
given or withheld in the several townships, there would or
would not be an act of assembly in force. Practically viewed
such legislation could result in nothing but accomplishing what
the constitution forbade. "But the same shall not take effect
in any county of this commonwealth, until it has been ascer-
tained that the provisions thereof are deemed expedient and
desired therein, by an election as hereinbefore provided," is
the language of the death warrant which the legislature itself
wrote into the act of 1885. We cannot make more plain the
distinction we have sought to draw throughout this opinion
than to place, side by side, the acts of 1885 and of 1905 and
note their essential structural differences. In these differences
we find the evidence that the latter is free from the vice that
properly condemned the former. "The act was passed for a
wise purpose. But whether a wise law or not, the courts have
no right to declare it invalid unless it clearly violates some
constitutional provision. Where none of the reserved rights

of the people of the commonwealth are involved, 'to doubt is to be resolved in favor of the constitutionality of the act: ' " Middletown Road, 15 Pa. Superior Ct. 167.

The decree discharging the rule is reversed, the petition is reinstated and a procedendo awarded.