# Commonwealth, Appellant, v. Sweeney.

*Statutes—Construction—Adulteration of drugs—Act of May 8, 1909, P. L. 470.*

The Act of May 8, 1909, P. L. 470, entitled "An act to prevent the manufacture and sale of adulterated or misbranded drugs; defining the word 'drug'; prescribing penalties for violation of this act, and the method of its enforcement," is a highly beneficial and remedial statute, and must be so construed, if possible, as to give effect to legislative intent. The fact that it carries a penalty for its violation, and to that extent may be regarded as a penal statute, is not a ground for subjecting it to such a hypercritical construction as to thwart the legislative design.

*Constitutional law—Delegation of legislative power—Adulteration of drug—Definition of drug—Act of May 8, 1909, Section 3, Clause 1, P. L. 470—Revival or amendment of law.*

The first clause of Section 3, of the Act of May 8, 1909, P. L. 470, which provides "that for the purpose of this act, an article shall be deemed to be adulterated: First: If a drug is sold under or by any name recognized by the United States Pharmacopoeia, the National Formulary, or the American Homeopathic Pharmacopoeia, it differs from the standard of strength, quality or purity as determined by the test or formula laid down in" the standard works mentioned, etc., does not violate Article II, Section 1, of the Constitution of Pennsylvania prohibiting any delegation of legislative power, inasmuch as it does not designate any person or body to which such power is delegated.

Clause 1, of Section 3, of the Act of May 8, 1909, P. L. 470, does not violate Article III, Section 6, of the Constitution of Pennsyl-

vania· which provides that "No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only," inasmuch as there is nothing in the language used, disclosing an intent to write into the provisions of the act any former law of Pennsylvania or the United State, or to stamp with legislative power and authority any future act of the editors or compilers of the standard works mentioned. The act is to be construed only as referring to the standard editions of the works mentioned, in existence at the time of the passage of the act.

Com. v. Dougherty, 39 Pa. Superior Ct. 338, distinguished and explained.

Argued Nov. 30, 1914.    Appeal, No. 120, April ·T., 1915, by plaintiff, from order of Q. S. Fayette Co., Sept. Sessions, 1914, No. 115, quashing indictment in case of Commonwealth v. J. H. Sweeney.    Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.    Reversed.

Indictment for violation of the Act of May 8, 1909, Sec. 3, Clause 1, P. L. 470.    Before UMBEL, P. J.

The case turned upon the constitutionality of the Act of May 8, 1909, Clause 1, Section 3.    The facts are stated in the opinion of the Superior Court.

*Error assigned* was order quashing the indictment.

*Charles A. Lewis,* with him *S. Ray Shelby,* for appellant.—The standard by which the strength, quality and purity of a "drug" is tested is the formulæ laid down in three standard works of authority in general use among pharmacists, physicians, and manufacturing druggists of the United States.

The words designating these, or the one adopted as a standard, in the State of Ohio Act is "United States Pharmacopœia," etc.    In the United States Pure Food and Drug Act of 1906, the words are "Pharmacopœia official at the time of the investigation," and in the Pennsylvania Pure Drug Act of May 25, 1897, P. L. 85 (now repealed), the words used are the "Latest Edition" of the Pharmacopœia of the United States, the National

Formulary, or the American Homeopathic Dispensatory.

All of these acts have been declared constitutional upon this point: Ohio v. Emery, 55 Ohio 364; Commonwealth v. Costello, et al., 18 D. R. 1067.

The general tendency of the courts upon this subject is shown in Southern Pac. Co. v. United States, 171 F. R. 360; Standard Oil Co. v. United States, 221 U. S. 1; Union Bridge Co. v. United States, 204 U. S. 364; Locke's App., 72 Pa. 491; McGonnell's License, 209 Pa. 327.

"The legislature can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend": McGonnell's License, 209 Pa. 327; O'Neil v. Artisans Ins. Co., 166 Pa. 72; Locke's App., 72 Pa. 491; Buttfield v. Stranahan, 192 U. S. 470.


*H. S. Dumbauld,* with him *Robinson & McKean* and *R. M. Carroll,* for appellee.—The general language of this statute is its undoing. There is room for the contention that there is no delegation of legislative power in adopting from a standard authority and a recognized edition a definition for "adulterated" drugs.

It is an entirely different proposition to refer the definition generally to three authorities without mentioning any edition.

The provision in question clearly violates Article III, Section 6, of the Constitution: Com. v. Dougherty, 39 Pa. Superior Ct. 338; Com. v. Kephart, 17 Dist. Rep. 1051.


Opinion by Head, J., October 25, 1915:

The Act of May 8, 1909, P. L. 470, is entitled, "An act to prevent the manufacture and sale of adulterated or misbranded drugs; defining the word 'drug'; prescribing penalties for violation of this act, and the method of its enforcement." The statute therefore be-

longs to that class of legislation which has for its aim and object the prevention of such injuries to the public health as are likely to result from the general use of impure or adulterated food, drinks, drugs, and other like articles. Such statutes are highly beneficial and remedial and must be so construed, if possible, as to give effect to the legislative intent. It is apparent that if such a statute is to become fully operative, some penalty must be prescribed for those who refuse to obey it. In this sense and to this extent it may be regarded as a penal statute. But it is not on that account to be subjected to such a hypercritical construction as would thwart the legislative design.

The first section declares it to be unlawful for anyone to sell, offer for sale or have in possession, with intent to sell, any drug adulterated or misbranded within the meaning of the act. The second section defines the word "drug" and states what shall be included within that term as used in the statute. The first clause of section three which gives rise to this controversy we quote: "That for the purpose of this act, an article shall be deemed to be adulterated: First: If a drug is sold under or by any name recognized by the United States Pharmacopœia, the National Formulary, or the American Homeopathic Pharmacopœia, it differs from the standard of strength, quality or purity as determined by the test or formula laid down in" the standard works already mentioned, etc.

The defendant in the present case was indicted for a violation of this statute. The indictment charges that the defendant "did have in his possession, with intent to sell, and did sell and offer to sell adulterated and misbranded drugs, to wit, essence of ginger, the same not being of the standard of strength, quality and purity by the test or formulæ laid down in the United States Pharmacopœia, etc., contrary to the form of the act of assembly," etc. When the case was called for trial defendant's counsel moved to quash the indictment because the

third section of the statute already quoted is unconstitutional and void for the reasons (a) that it is in violation of Article II, Section 1, of the Constitution prohibiting any delegation of legislative power, and (b) because it is in conflict with Article III, Section 6, of the said Constitution which provides: "No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only," etc.   The learned trial court, declaring orally from the bench that "provision first of the third section of the Act of May 8, 1909, is unconstitutional," granted the motion and quashed the indictment.   The Commonwealth then took this appeal.

We will briefly consider the two reasons assigned in the order in which they are stated:

(1) If the statute does in fact contain a delegation of legislative power, it ought to be apparent to what person or body such power is delegated.   It should also be clear, that without the exercise of legislative power by the person or body to whom the delegation has been made, the statute remained incomplete, so that the legislative will had not yet been fully made known.   In considering a similar objection to an earlier statute, this court said, in Foster Township Road Case, 32 Pa. Superior Ct. 51: "Did not the act, upon its approval by the governor, become immediately effective in every township of its class throughout the Commonwealth?   Did it need or invite the aid of any other power or authority to make its commands and prohibitions binding and obligatory on every municipality, officer or taxpayer within the sweep of its provisions?   Did the law come from the hands of its creator, the legislature, in a state of suspended animation, thus to continue, until some affirmative act of Foster Township or its taxpayers gave to it the force and vitality of a living enactment?"

When we examine the statute now before us in the light of these considerations, we must necessarily reach the conclusion adopted in the case just cited.   Can it be fairly argued that the proprietor or compiler of the

United States Pharmacopœia, for instance, is given any authority to do or omit to do any act which would determine the guilt or innocence of one charged with a violation of the statute?   It is by virtue of the legislative declaration, and of it alone, the defendant was prohibited from selling an adulterated drug.   There is no hint in the act of any power or authority in the compiler of the pharmacopœia to nullify in any respect the prohibition of the statute; or to so act as to change for better or worse the condition of any citizen affected by the terms of the enactment.   It is no new doctrine, certainly since Locke's App., 72 Pa. 491, to hold that because the legislative will is to become operative on the ascertainment of a fact which is to be determined aliunde the statute itself, the legislative effort does not become abortive.   As was shown in Foster Township, supra, the reasoning of Locke's Appeal has been approved in many cases down to and including the latest utterances of the Supreme Court on the subject.   This court followed it in the case cited, and we are convinced the same line of reasoning applied to the case before us must lead to the conclusion that the Act of 1909 discloses no attempt on the part of the legislature to delegate to another those legislative powers which must reside exclusively in the general assembly.

(2)  Has the legislature undertaken to revive or amend any law or extend or confer its provisions by reference to its title only?   An examination of the act itself reveals to our vision no such attempt.   There is nothing in the legislative language disclosing an intent to write into its provisions any former law of the state or the United States; or to stamp with legislative power and authority any future act of the editors or compilers of the standard works referred to.   The argument that such compilers would be at liberty from time to time, at their pleasure, to issue new editions of the several works in which the formulæ for compounding certain drugs might be changed from those in existence at the time of

the legislative enactment, and thus create an offense, is
without force.   The plainest principles of construction
ought to lead any court to determine that the legislative
language referred only to the standard editions of such
works in existence at the time of the passage of the act.
This was the conclusion reached by the Supreme Court
of Ohio in the construction of a statute similar to the one
before us, Ohio v. Emery, 53 Ohio 364.   The same rea-
soning was adopted and the same conclusion reached by
President Judge McMichael, of Common Pleas No. 3 of
Philadelphia County, in a careful and convincing opin-
ion in Commonwealth v. Costello, reported in 18 Pa.
Dist. Rep. 1067.

But we are earnestly urged to say that the question
now under consideration is ruled by our own case of
Commonwealth v. Dougherty, 39 Pa. Superior Ct. 338.
There is, however, a broad and marked distinction be-
tween the two cases.   Leaving out of consideration en-
tirely one of the two separate and distinct grounds on
which the judgment in that case rested and confining
our attention to the remaining one, it is to be observed,
(a) that the statute there in question did in terms un-
dertake to read into itself, by reference only to its title,
an entire act of the federal Congress known as the "Food
and Drugs Act of June 30, 1906."   Now an act of the
federal Congress is a law.   Where its terms are applica-
ble, it is as much the law of Pennsylvania as it is of
Maine or California.   To attempt to write in bulk the
entire terms and provisions of such a law into a statute
of Pennsylvania, by a reference only to its title, would
be a legislative act clearly and expressly forbidden by
the very language of our own Constitution.   It is to be
further noticed (b) that the operation of the statute
which was in part stricken down in that case not only
attempted to re-enact, by a reference to its title merely,
the entire provisions of an act of the federal Congress,
but as well to incorporate in our statute "the rules and
regulations promulgated from time to time for the en-

forcement of the same." It does not require an elaborate discussion to show that the statute we are now considering, whether we view it literally or substantially, is in an entirely different class from that construed in Commonwealth v. Dougherty.

We are of opinion, therefore, that the Act of 1909, under which the defendant was indicted, cannot be stricken down on the ground that in its enactment the legislature had gone outside the constitutional limitations on the legislative power. The assignment of error is sustained.

The order or decree quashing the indictment is reversed and set aside and a procedendo awarded.