## Soble et al. v. State Board of Pharmacy

*John H. Fertig* and *Herbert B. Cohen*, for plaintiffs.

*William M. Rutter* and *George J. Barco*, Deputy Attorneys General, and *Claude T. Reno*, Attorney General, for respondents.

HARGEST, P. J., April 3, 1940.—Plaintiffs, trading as Nevins Drug Company, applied for a writ of mandamus to compel the State Board of Pharmacy to issue a renewal permit to them to conduct a pharmacy located at 53 West Market Street, in the City of York. The petition and the amended petition aver that petitioners held a permit

for the year ending June 30, 1939, and made application on June 5th, June 15th, and June 28, 1939, for a renewal blank, which said form petitioners did not receive until June 30, 1939. Petitioners thereupon made application under their form, accompanied by the prescribed fee, giving the names, addresses, certificate numbers, and annual registration numbers of two registered pharmacists who would be regularly employed.

On July 28, 1939, petitioners were notified by letter that the board refused the renewal permit, which letter stated that "the board deems them unqualified in that the terms of their agreement under which the company was operating for a period of six months were violated. One of the terms being that no illegal advertising would appear in any newspapers, magazines, by radio or otherwise. Since this has been violated the Board has instructed me to return and refuse this application." Subsequently, at the request of the Deputy Attorney General representing the State Board of Pharmacy, hearings were held on September 19th and October 17, 1939, and, at an executive session on the latter day, the board refused to issue the permit, advising counsel for petitioners:

"After carefully reviewing all the facts relating to the Nevins Drug Company case the board decided that the Nevins Drug Company is deemed 'Not Qualified' to receive a pharmacy permit and accordingly you are hereby notified of the board's refusal to grant such a permit to them."

Thereafter the board filed a motion to quash this writ on the ground that the petition shows no right in relators and no legal duty on the part of defendants to issue the permit, and that the action sought is to have the court revise the deliberative and discretionary power of the board, which is quasi-judicial in nature, and which authority the court does not have.

*The Statute*—The Act of May 17, 1917, P. L. 208, regulates the practice of pharmacy, established the Pennsylvania Board of Pharmacy, prescribed its duties, and

provides for the examination and registration of pharmacists.

The Act of May 26, 1921, P. L. 1172, which is a supplement to the Act of 1917, provides in section 1:

"That no pharmacy, as defined by the act to which this is a supplement, shall be kept open for the transaction of business until it has been registered with and a permit therefor has been issued by the Pennsylvania Board of Pharmacy . . ."

Section 2 provides:

"Upon application, on a form to be prescribed and furnished it, and the payment of a fee of two dollars ($2.00), the Pennsylvania Board of Pharmacy shall issue a permit to conduct a pharmacy to such persons, associations, copartnerships, or corporations, *as the board deems qualified to conduct such business*. . . . No permit shall be issued unless it appears to the satisfaction of the board that the management of the pharmacy is in the charge of a pharmacist registered under the provisions of the act to which this is a supplement." (Italics supplied.)

Section 3 provides for a suspension or revocation of a permit after hearing and notice and of charges made against the holder.

Section 4 imposes a penalty of fine or imprisonment for violating any of the provisions of the act.

This case presents several questions: First, whether the mandamus will lie; second, whether the Act of 1921, supra, is constitutional, and, if it be constitutional, whether the action of the State board in this case is a constitutional exercise of power.

Involved in this is whether there is an illegal delegation of legislative power to the State Board of Pharmacy without any properly prescribed standards.

A motion to quash a writ of mandamus necessarily is in effect a demurrer and admits all the facts properly pleaded in the petition: 11 Standard Pennsylvania Practice, "Mandamus", secs. 83 and 84. The court has power

to quash the writ if the substance of a case has not been shown: Spahn v. Bielefeld & Spahn Co. et al., 256 Pa. 543.

*Will mandamus lie?* The ancient prerogative writ of mandamus was created to give a remedy where there was no other adequate remedy at law, and still performs that function.

In Chilli v. McKeesport School District, 334 Pa. 581, it is held:

"1. Mandamus is not a remedy of absolute right but an extraordinary writ, discretionary with the court, and can be obtained only when there is a clear legal right in the relator and a positive duty of the defendant to be performed, and where there is no other adequate, specific or appropriate remedy; it can never be invoked in a doubtful case.

"2. Mandamus may issue to compel a public officer to perform a ministerial duty, but it cannot issue against such officer where there is any discretion to act remaining in him."

See also Gold v. Building Committee of Warren Borough et al., 334 Pa. 10; Reese v. Board of Mine Examiners, 248 Pa. 617, 622.

Where there is a right to a permit which has been wrongfully refused, mandamus should issue: Coyne v. Prichard et al., 272 Pa. 424; as also where there is a right to an examination for a certificate which has been arbitrarily refused: Reese v. Mine Examiners, 248 Pa. 617, 622; so where an administrative board attempts to enlarge its own jurisdiction by an erroneous construction of the statute, it is subject for review in a mandamus proceeding: Grime et al v. Department of Public Instruction, etc., et al., 324 Pa. 371, 376.

See also Arthur v. Pittsburgh et al., 330 Pa. 202, and Commonwealth ex rel. v. Devlin, 305 Pa. 440.

In Robinson v. Willits, etc., 29 Dauph. 304, 306, which sustained a proceeding in mandamus, this court said:

"We do not think it is within the discretionary power of the Secretary of Agriculture to refuse payment of the claim of the petitioner because the Secretary does not think the new association in which the cows of the petitioner were registered is not quite as full and complete with its records as the old association."

While it is the settled law of this State that the discretionary power of an official will not be interfered with by the courts, yet the converse is equally true.

In Horowitz v. Beamish, 323 Pa. 273, 275, it is said:

" 'Where a person or body is clothed with judicial, deliberative or discretionary powers, and he or it has exercised such powers according to his or its discretion, mandamus will not lie to compel a revision . . . of such discretion, though, in fact, the decision may have been wrong.' " (Citing cases.)

On the other hand, in Edelman v. Boardman, etc., 332 Pa. 85, 92, it is said:

"If *some* form of action is mandatory under the law, and the only discretion is with regard to the *method* of performance, mandamus may compel the exercise of the discretion, but without directing the manner of such exercise. If, however, the discretion be as to whether the act shall be performed at all, performance cannot be judicially decreed." (Citing cases.)

In Johnson v. State Board of Veterinary Medical Examiners, 46 Pa. Superior Ct. 279, 285, it is held:

"If, however, such judgment or discretion is abused, or there is a mistaken view of the law as applied to the admitted facts of the case, the writ will issue to compel action according to law."

In Illinois State Board of Dental Examiners v. People ex rel., 123 Ill. 227, 13 N. E. 201, the board was given discretion to determine what colleges were reputable in the matter of the issuance of licenses. It was said (p. 245):

". . . the board did not refuse to grant the license on the ground that the Northwestern College was not reputable. . . . They had no discretion as to any other matter

than the character of the college issuing the diploma, as to its being reputable or not reputable. When that matter was decided and out of the way, their judicial or discretionary power was exhausted. The duty to issue the license was then a mere ministerial one, and its performance could be enforced by *mandamus*."

We think that the test of the valid exercise of deliberative or discretionary powers depends upon (*a*) whether they are lawfully given, and (*b*) whether they are lawfully exercised. If the power is not given, or if the power is unlawfully exercised, then executive or administrative officers are not beyond the reach of mandamus, and cannot be relieved of judicial supervision by pleading an improper construction of a statute: Interstate Commerce Comm. v. United States ex rel., 224 U. S. 474; Roberts, etc., v. United States, 176 U. S. 221.

No appeal is given by this statute. Where property rights are involved, some method of review of the action of administrative officers or boards by a judicial tribunal must be afforded, otherwise there is not due process of law.

In Harris v. State Board of Optometrical Examiners, 287 Pa. 531, 534, it is said:

"Where property rights, so secured, are unlawfully invaded by the legislature, directly or by one of its agents, the aggrieved person may appeal to the courts for redress. This right had its inception in the Magna Charta. The remedy, unless otherwise provided by statute, is by proceeding in equity to enjoin the wrong: [citing cases.] Where the statute provides no right of appeal to the courts from the determination of administrative tribunals on constitutional grounds, the right will be implied: Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 547; Buffalo B. Mut. Film Corp. v. Breitinger, 250 Pa. 225, 242."

In the case just referred to there was a mandamus. It was dismissed on demurrer, not because it was not the proper remedy but because the statute involved afforded due process of law: 29 Dauph. 415.

The converse of this proposition is found in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U. S. 1, 47.

We think it now to be settled law that where there is no appeal provided by statute, in a case where an administrative board refuses to act, and the error or illegality, if any, may be corrected by affirmative action, mandamus is the proper remedy. Where, however, there is an illegal or unconstitutional action which should be prevented, the forum is in equity. In the instant case petitioners had a license, the renewal of which was refused, and if that refusal was illegal, it may be readily and effectually corrected in an affirmative mandamus proceeding. We therefore think mandamus is the proper remedy.

*Does this statute prescribe sufficient standards?* The statute in this case prescribes no standard whatever for the issuance of a permit, except to such persons "as the board deems qualified to conduct such business". It, however, has a negative standard:

"No permit shall be issued unless it appears to the satisfaction of the board that the management of the pharmacy is in charge of a pharmacist registered under the provisions of the act to which this is a supplement."

The permit may be issued to "persons, associations, co-partnerships or corporations". The board may deem an individual not qualified because some member of the board may not like him. It might deem a partnership not qualified because some member of the partnership did not live in the place in which the business was to be conducted. It might deem a corporation not qualified because it did not have enough capital. There are any number of reasons, entirely disconnected with the business of operating a pharmacy, upon which the board might act to refuse a permit.

This case itself illustrates the situation. This permit was first refused because, according to the letter of the secretary, there were some violations of an agreement as to illegal advertising, and the refusal was without any

semblance of a hearing. Subsequently, after a hearing, according to the letter of the secretary, the board in an executive meeting refused the permit because it deemed the company "not qualified to receive a pharmacy permit", without then giving any reasons.

The literature of the law is now replete with cases to show that such conduct on the part of administrative boards cannot be sustained, and that such boards cannot lawfully exercise unlimited discretion where the legislature has prescribed no limits within which to confine such discretion. And the power of administrative tribunals under such a statute cannot be sustained upon the theory that it must be assumed that they would act for the public good.

In Panama Refining Co. et al. v. Ryan et al., 293 U. S. 388, it is held:

"5. The question whether the delegation is permitted by the Constitution is not answered by the argument that it should be assumed that the President has acted, or will act, for what he believes to be the public good. The point is not one of motives but of constitutional authority, for which the best of motives is not a substitute. . . .

"8. Congress may lay down its policies and establish its standards and leave to selected instrumentalities the making of subordinate rules, within prescribed limits, and the determination of facts to which the policy, as declared by Congress, shall apply; but the constant recognition of the necessity and validity of such provisions, and the wide range of administrative authority which has been developed by means of them, cannot be allowed to obscure the limitations of the authority to delegate, if our constitutional system is to be maintained.

"9. The question is not as to the intrinsic importance of the particular statute involved, but of the constitutional processes of legislation which are an essential part of our system of Government."

In Holgate Bros. Co. et al. v. Bashore, etc., et al., 45 Dauph. 274, 296, Judge Sheely, writing the opinion for this court, said:

"In Gima vs. The Hudson Coal Company, 106 Pa. Super. Ct. 288 (1932), President Judge Keller inquired into the history and scope of delegation of power by the legislature, and the same question was further considered in Rohrer vs. Milk Control Board, 121 Pa. Super. Ct. 281 (1936). In all of the cases the general rule laid down by Mr. Justice Agnew in Locke's Appeal, 72 Pa. 491; 498 (1873) seems to have been followed. That is: 'The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.' In Panama Refining Company vs. Ryan, 293 U. S. 388; 426 (1935), Chief Justice Hughes said: 'Moreover, the Congress may not only give such authorizations to determine specific facts, but may establish primary standards, devolving upon others the duty to carry out the declared legislative policy, that is, as Chief Justice Marshall expressed it, "to fill up the details" under the general provisions made by the legislature.' In J. W. Hampton, Jr. & Co. vs. United States, 276 U. S. 394, considering a delegation of power to fix tariffs subject to certain rules or standards, it was said (p. 409) : 'If Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to fix such rates is directed to conform, such legislative action is not a forbidden delegation of legislative power.' "

And the Supreme Court, 331 Pa. 255, 261, in the same case, said:

"So also the legislature may confer upon an executive department or other agency the power to find whether the facts exist upon which a law is to operate. Generally these facts are of a scientific nature, not involving a personal decision as to whether the facts should be considered within the general policy of the law in question."

Then follow illustrations of this principle, citing the cases of Gima v. Hudson Coal Co., 310 Pa. 480; Commonwealth v. Falk (No. 1), 59 Pa. Superior Ct. 217; Commonwealth v. Sweeney, 61 Pa. Superior Ct. 367; Butt-

field v. Stranahan, 192 U. S. 470; Union Bridge Co. v. United States, 204 U. S. 364; Red "C" Oil Mfg. Co. v. Board of Agriculture, etc., 222 U. S. 380; American Baseball Club of Phila. et al. v. Phila., etc., et al., 312 Pa. 311.

Continuing, the court said:

"There is another class of cases in which the fact left for future determination is not one conforming in any degree to scientific standard as in those just reviewed. These are cases in which primary standards are established and the duty delegated to make the policy of the legislature effective"; citing the cases of Panama Refining Co. et al. v. Ryan et al., supra, J. W. Hampton, Jr., & Co. v. United States, 276 U. S. 394, and Rohrer v. Milk Control Board, 322 Pa. 257.

In York Rys. Co. v. Driscoll et al., 331 Pa. 193, 197, the court said:

"The section provides that the Commission may exempt public utilities as to any class of securities. Principles prohibiting the delegation of legislative power forbid the grant to a legislative body of the power to prescribe which securities come within the act and which do not: *Nat. Transit Co. v. Boardman*, 328 Pa. 450, 197 A. 239, and cases there cited. Such a power would enable the Commission to nullify the section. This is not permissible under our constitutional provisions."

In the instant case the statute does not deal with or give to the board the right to find any facts of a scientific nature, or lay down any primary standards leaving to the board the duty "to make the policy of the legislature effective." It is a bald delegation to the board of an unlimited, unconfined, and undescribed discretion.

An illustration very much in point is found in the case of People v. C. Klinck Packing Co., 214 N. Y. 121, in which it is held:

"The legislature, however, cannot secure relief from its duties and responsibilities by a general delegation of legislative power to some one else, and hence the provision of

the statute (L. 1914, ch. 396), which exempts 'Employees, if the commissioner of labor in his discretion approves, engaged in the work of any industrial or manufacturing process necessarily continuous, in which no employee is permitted to work more than eight hours in any calendar day,' is unconstitutional because of the attempt which the legislature has made to delegate its powers to the commissioner of labor and to permit him to determine without any guide whether the provision shall take effect."

It follows that there is no constitutional authority vested in the State Board of Pharmacy to refuse permits for any reason other than that which would be against a settled public policy inherent in our very frame and structure of government. It could not refuse upon some ground of policy which the board deems should exist but which the legislature has not established.

*Is the act wholly unconstitutional?*—The next question is whether the act itself is inherently unconstitutional or whether it can be sustained and the decision rested upon the action of the board in the instant case.

The Statutory Construction Act of May 28, 1937, P. L. 1019, provides in section 52:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others. . . .

"(3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth."

It is not necessary to cite authorities for the proposition that the court should, if possible, sustain the statute. One such case is sufficient: Commonwealth v. Schuylkill Trust Co., 327 Pa. 127, 134. Many statutes may be constitutional, while in the use of them the Constitution may be violated. This is particularly true because of the tendency of administrative agencies to stretch the language of their regulating statutes beyond the powers clearly given. See opinion of this court in Green's Dairy v. Milk Control

Commission, 988 Com. D. 1938, filed March 26, 1940. We think that is the situation in the instant case.

Section 1 of the act makes it unlawful to operate a pharmacy without a permit. Section 2 provides how the permit shall be secured, prescribes the fee for it, and prohibits the board from granting a permit unless it appears to the satisfaction of the board that a registered pharmacist is to be in charge of the pharmacy. Section 3 provides the machinery to revoke or suspend permits after hearing or notice for the reasons specified in the section. This section is defective because it does not provide for an appeal, but, as we have heretofore pointed out, a judicial review will be supplied even though the act does not provide for it, and the statute should not be stricken down for that reason alone. Section 4 is a penalty section.

It is apparent that the provision in section 2 giving the unlimited and undefined discretion to the board may be severed from the act without destroying the whole statute, and when that can be done the statute itself should not be declared void. We are of opinion, therefore, that in this case the court is not required to strike down the act, but it is sufficient to decide that the use which the board has made of it is unwarranted and unconstitutional. With the discretionary feature eliminated the act is a complete and workable statute.

*Are plaintiffs estopped from raising the constitutional question?*—The board contends that plaintiffs cannot claim the benefit of the act and, at the same time, assert that it is unconstitutional. It is settled that one who accepts the benefits of a statute cannot be heard to question its constitutionality: Ashwander et al. v. Tennessee Valley Authority et al., 297 U. S. 288, 323; Montgomery County Bar Assn. v. Rinalducci, 329 Pa. 296, 298.

That rule, however, does not go to the extent of saying that one who accepts the benefits of an act must take the whole act and cannot be heard to say that any

part of it is unconstitutional, or that an act under which he receives a benefit is being unconstitutionally used.

This is illustrated in the case of Commonwealth ex rel. v. Ortwein et al., 132 Pa. Superior Ct. 166, 170 where it is said:

"Having invoked the provisions of the Act relative to obtaining a license and tendered the bond required to be filed with the application and obtained its approval by the board, they are barred from denying liability on the bond on the ground of the unconstitutionality of the provisions of the act requiring such license and bond."

It follows that there is no legal obstacle to prevent plaintiffs from raising the question of the unconstitutional exercise of a discretion by the board in refusing to issue a permit to continue the business.

For the reasons hereinabove given, we think that the board illegally refused to issue a renewal permit to plaintiffs to continue the pharmacy business.

And now, April 3, 1940, the motion to quash the alternative writ of mandamus is hereby refused, the petition is sustained, and defendant is permitted to file a return to the writ on the merits within 15 days from this date.