## Commonwealth v. Prince Manufacturing Company

*Stuart S. Bowie,* Special Assistant Attorney, for Commonwealth.

*George T. McKinley,* for defendant.

HEIMBACH, P. J., December 14, 1971.—We have for disposition defendant's appeal from its conviction of violating the Air Pollution Control Act of January 8, 1960, P. L. 2119, as amended, 35 PS §4001.

We heard the case de novo, in accordance with section 3 of the Minor Judiciary Court Appeals Act of December 2, 1968, P. L. 355, 42 PS §3003(f).

Defendant is charged with having, on May 18 and May 24, 1971, violated an abatement order of the Commonwealth Department of Health by permitting dust particles to emanate from its rock-crushing machine beyond its property line, contrary to the provisions of section 8 of the Air Pollution Control Act, supra, 35 PS §4008, which provides:

"It shall be unlawful to fail to comply with any rule or regulation or fail to comply with any order of the department . . ."

Prosecution was brought under section 9 of the Air Pollution Control Act, supra, 35 PS §4009, which provides:

"(a) Summary Offense. Any person as herein de-

fined,[1] . . . engaging in unlawful conduct as set forth in section 8 of this act (35 PS 4008) shall, for each offense, upon conviction thereof in a summary proceeding . . . be sentenced to pay the costs of prosecution and a fine of not less than one hundred dollars ($100.00) nor more than five hundred dollars ($500.00), and, in default thereof, to undergo imprisonment of not less than ten (10) days nor more than thirty (30) days."

Following is a summary of the evidence adduced:

Defendant received the following certified letter from the Department of Health within due course after its mailing:

"September 11, 1970

"CERTIFIED MAIL

"Prince Manufacturing Company

700 Lehigh Street

Bowmanstown, Pennsylvania 18030

DOCKET No. 70-225

"Attention: Mr. W. O. Harris
Manager of Procurement and
Technical Services

"Gentlemen:

"Subject: Air Pollution Abatement Order

"The Department of Health has determined that the particulate matter emissions from the operations at your plant located in Bowmanstown Borough, Carbon County, Pennsylvania, are introducing contaminants into the outdoor atmosphere which are exceeding the limits set forth in Section 1.3 of Air Pollution Commission Regulation IV and are causing air pollution as defined in the Air Pollution Control Act, the Act of January 8, 1960, P. L. 2119, as amended, 35 PS §4001, et seq.

---

[1] Defendant falls within the definition of person.

"The Department, therefore, this 11th day of September, 1970, issues the following order pursuant to the provisions of said Act:

" '(1) That the Prince Manufacturing Company shall, on or before March 31, 1971, install air pollution control equipment and/or institute process changes designed to reduce particulate matter emissions from all the drying operations at its plant located in Bowmanstown Borough, Carbon County, Pennsylvania, to within the limits specified in Section 1.3 of Air Pollution Commission Regulation IV.

" '(2) That the Prince Manufacturing Company shall, on and after March 31, 1971, reduce the particulate matter emissions from all the drying operations at its plant located in Bowmanstown Borough, Carbon County, Pennsylvania, to within the limits specified in Section 1.3 of Air Pollution Commission Regulation IV.

" '(3) That the Prince Manufacturing Company shall, on and after October 1, 1970, control fugitive dust emissions from the following sources at its plant located in Bowmanstown Borough, Carbon County, Pennsylvania, to such a level that these emissions are not detectable beyond the company's property line:

" '(a)  the plant roadways;
" '(b)  the stockpiling of ore;
" '(c)  the plant's crushing equipment.

" '(4)  That commencing October 1, 1970, the Prince Manufacturing Company shall submit to the Department of Health monthly progress reports which shall detail the company's progress toward compliance with paragraphs (1), (2) and (3) of this order.'

"Any questions on this action of the Department of Health should be directed to Mr. James K. Hambright,

Bureau of Air Pollution Control, Department of Health, P. O. Box 90, Harrisburg, Pennsylvania 17120.

"Sincerely,

"Victor H. Sussman, Director
Bureau of Air Pollution Control

"Attachments
"Notice of Rights of Appeal
Air Pollution Control Act, as amended
Regulation IV and Guides"

Although not important in deciding the issue before us, defendant testified it believed it was given additional time to comply with the order. No appeal was taken from this order.

Two of the department's employes and a resident of the Borough of Bowmanstown testified that on May 18 and May 24, 1971, dust particles were visually observed emanating from its rock-crushing machine beyond defendant's property line. No measuring instrument or mechanical device was employed to measure the volume or quantity of the dust, although one of the witnesses, who was trained in air pollution matters, stated measurements could readily have been made.

Defendant offered no evidence in contradiction of the Commonwealth's testimony.

Defendant advances two reasons why we should sustain its appeal and enter a verdict of not guilty:

"(a) That the order of the Department in directing the defendant to control fugitive dust emission from the plant's crushing equipment to such a level that these emissions are not detectable beyond the company's property line is too broad, thus being an unreasonable requirement unrelated to any standard of legislative delegation of power and is without legal effect."

We dismiss this contention, which we hold arises out of an erroneous construction of the department's abatement order by defendant, and is irrelevant for reasons hereinafter stated in this opinion.

"(b) That although scientific instruments or measuring devices are available to measure the quantity or volume of the dust, the Commonwealth chose to rely on visual observation testimony alone to prove its case."

This contention is meritorious for the same reasons asserted by the court in Bortz Coal Company v. Commonwealth, infra, and North American Coal Corporation v. Commonwealth, 2 Com. Ct. 469 (1971). The Commonwealth answers this in its brief as follows:

"Defendant relies on Bortz Coal Company v. Commonwealth, 2 Commonwealth Court 441 (1971). That case was an appeal from an abatement order pursuant to 35 PS §4004 (4.1), i.e., the kind of appeal *not* taken by defendant here, and the issues were whether the Commonwealth had conducted sufficient tests to establish a local air pollution problem under section 1.3 of Regulation IV. The Bortz case revolved around the evidence required to prove emissions in excess of the *numerically expressed* limits of section 1.3 of Regulation IV. (As can be observed by reviewing such section 1.3, which is reproduced at pages 454-455 of the Court's opinion, 'smoke emissions' are to be determined by use of a 'Ringleman Smoke Chart', particulate matter is to be measured in 'micrograms of suspended particulate matter per cubic meter' or 'milligrams of particle fall per square centimeter per month', and fugitive dust in terms of 'milligrams per cubic meter of air'.)

"In Bortz, the Commonwealth failed to use instruments to make the various scientific measurements

contemplated by section 1.3 as a *prerequisite to issuance of an abatement order.* Thus, the Court remanded the case so that such tests could be conducted. (Page 458-459). A similar conclusion was reached in another abatement order appeal. North American Coal Corp. v. Commonwealth, 2 Commonwealth Ct. 469 (1971).

"Bortz and North American, however, do not support defendant in the present case. First, those decisions relate to the sufficiency of evidence needed to *support an abatement order* under section 1.3. However, in the present litigation, defendant failed to appeal such order within the time provided by 35 PS §4004 (4.1) and must, therefore, be considered to have acquiesced thereto. If it had doubts about tests performed by the Commonwealth in preparation for the abatement order, it should have pursued the same by way of appeal, as did the appellants in Bortz and North American.

"At this juncture, therefore, Bortz and North American have no relevance. *Those decisions do not discuss the evidence required to prove violation of an order which, like Paragraph (3) of the present Order, is not expressed in numerical terms, but merely requires that emissions be 'not detectable.'* As to such an order, visual observations clearly constitute adequate means of proof. Indeed, what is detectable visually *a fortiori* will be detected by scientific instruments." (Italics supplied.)

We italicized sentences and words taken from its brief which we believe point to the errors in the Commonwealth's and defendant's construction of the abatement order. It is our view the department complied with legislative mandates expressed in section 4005-(d)(6) and (7) of the Air Pollution Control Act, 35 PS §4005(d)(6)(7), which provides:

"(d) The Commission[2] shall have the power and its duty shall be to—. . .

"(6) Establish and publish maximum quantities of air contaminants that may be permitted under various conditions at the point of use from any air contaminant source in various areas of the Commonwealth so as to control air pollution.

"(7) By rule or regulation, classify air contaminant sources, according to levels and types of emissions and other characteristics which relate to air pollution. Classifications made pursuant to this subsection shall apply to the entire Commonwealth or any part thereof. Any person who owns or operates an air contaminant source of any class to which the rules and regulations of the Commission under this subsection apply, shall make reports containing information as may be required by the Commission concerning location, size and height of air contaminant outlets, processes employed, fuels used and the nature and time periods or duration of emissions, and such other information as is relevant to air pollution and available or reasonably capable of being assembled."

when in the same letter preceding the abatement order, supra, it said this:

"The Department of Health has determined that the particulate matter emissions from the operations at your plant located in Bowmanstown Borough, Carbon County, Pennsylvania, are introducing contaminants into the outdoor atmosphere *which are exceeding the limits set forth in Section 1.3 of Air Pollution Commission Regulations IV* and are causing air pollution as defined in the Air Pollution Control Act, the Act of

---

[2] Duties transferred from Air Pollution Commission to Department of Environmental Resources. See 71 PS §510 - 1 (23).

January 8, 1960, P. L. 2119, as amended, 35 PS §4001, et seq."[3]

We hold that, notwithstanding reference to section 1.3 of Air Pollution Commission Regulation IV being made in (1) and (2) and not in (3) of the abatement order, such pollution limits set forth in section 1.3 of regulation IV are applicable to (3) in keeping with the intent of the commission and the applicable law as expressed in such opening paragraph of the letter.

All penal provisions in a statute must be strictly construed: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 58, 46 PS §557. Thus, where a statute contains penal and remedial provisions, the former are construed strictly and the latter liberally: Commonwealth v. Sweeney, 61 Pa. Superior Ct. 367 (1915).

We conclude that (3) of the abatement order must be construed to mean that defendant is in violation of its order only if the fugitive dust from the rock crushing machinery exceeds a concentration of 2.0

---

[3] Regulation IV, inter alia, provides:

"Section 1.3. Limits for Particulate Matter Emissions.

"In the absence of a determination by the Commission imposing more stringent or less stringent limits, as provided for in Section 1.4 of this regulation, a local air pollution problem shall be deemed to exist:

". . .

"(3) If any person causes, suffers, allows or permits fugitive dust to be emitted into the outdoor atmosphere from any air contamination source or sources in such a manner that the ground level concentration of fugitive dust (as determined in accordance with Section 1.5) from the air contamination source or sources at any point outside the person's property exceeds a concentration of 2.0 milligrams per cubic meter of air above background concentration, for any 10 minute period."

Section 1.5 of regulation IV states that source testing will be made "when possible and practical."

milligrams per cubic meter of air above background concentration for any 10-minute period, and, in addition, must be detectable. This being so, proof that the dust concentration was detectable without proof that the dust concentration exceeded maximum limits and continued exceeding such limits for 10 minutes and upwards will not support a finding that defendant is in violation of the abatement order.

We add that the statement of counsel for the Commonwealth quoted in this opinion at page 6, "Indeed, what is detectable visually *a fortiori* will be detected by scientific instruments," is accurate enough, but meaningless, since it is likely that any particulate matter emission would be detectable, even though such matter is within the allowed limits.

Assuming arguendo the Commonwealth's expert witness had testified, without contradiction, that it was his opinion such dust emission exceeded maximum limits for more than 10 minutes, the Commonwealth, nevertheless, would have failed to meet its burden of proof, since it may not rest its case on visual evidence alone, when scientific evidence is available or could have been obtained: Bortz Coal Company v. Commonwealth, and North American Coal Company v. Commonwealth, supra.

Judge Kramer in North American Coal Company v. Commonwealth, supra, at pages 476-77, says this:

"We note that Section 1.5 of Regulation IV states that source testing will be made 'when possible and practical.' There is nothing in this record which would indicate in any way that the taking of any tests in addition to visual ones was not possible and practical.

"*Although we agree with the Commission that the burden of proof is not as heavy as is required in a criminal case,* we do take note of the fact, however, that the effect of the abatement order of the Commis-

sion is no small matter. In view of the fact that we are entering into a new field of law in these air pollution cases, we believe it to be important to establish at an early date that the regulatory agencies of this State must prove their case. We must evaluate the testimony of the Commission witness in the light that he is an employee of the very same adjudicating body passing upon his testimony. It doesn't take unusual wisdom to understand the closeness of the witness to the adjudicating body and the possibilities that present themselves to an employee attempting to impress his employer. Under these circumstances it is not reasonable, nor does it follow the well established principles of fairness, in our system of jurisprudence, to permit such a witness to declare a citizen of this Commonwealth to be in violation of the Commission's regulations based solely upon visual tests, when more reliable scientific tests are available. We want to make it clear that visual tests do constitute inadmissible[4] evidence as a test, but, nevertheless, when recognized scientific tests are available and practical, courts must insist upon their use and presentation. If there are no scientific tests possible or available, these circumstances must be explained upon the record. In such a case extraordinary care should be taken to make certain that the visual tests are made accurately and fairly and constitute sufficient proof to sustain the opinions of the experts presented." (Italics supplied.)

We find no merit in the Commonwealth's contention that the need for scientific evidence is only applicable on appeals from an abatement order. Note Judge Kramer's statement which we italicized, supra.

We are aware of the concern of the residents of the Borough of Bowmanstown, many of whom have been

---

[4] admissible?

frequently inconvenienced, and in some cases sustained actual damages from smoke and dust particulates emanating from defendant's operations. These are facts personally known to us. We are aware, too, that defendant is making an effort to correct or at least alleviate the condition. We are aware, too, of the many economic factors that are involved in pollution cases, to name one, ceasing operations, resulting in the loss of jobs, if the condition cannot be corrected.

Our function, however, is confined to adjudicating this case, as is true in every case, on the law applicable to the issues.

Wherefore, we enter the following

### ORDER

Now, December 14, 1971, we sustain the appeal of defendant and find it not guilty, the Commonwealth having failed to carry its burden of proof.

Costs on the County of Carbon.